IN MATTER OF ASSESSMENT OF COLLATERAL INHERITANCE TAX AGAINST ESTATE OF JAMES QUIRK, Deceased.

**In Banc, April 13, 1914.**

1. **COLLATERAL INHERITANCE TAX: Property Devised to Charity or Education: Life Estate.** Under the statute (Sec. 309, R. S. 1909) Missouri property devised for educational and religious purposes within this State is not chargeable with a collateral inheritance tax. And real estate devised to testator's sister for life, with remainder for such purposes, the sister having died before administration, is devised to such uses.

2. ————: ————: **Charities Outside of State.** The statute does not exempt from a collateral inheritance tax property devised to educational or religious organizations located in

another State for educational or religious uses in such State. [WALKER, WOODSON and BOND, JJ., dissenting.]

3. ———: **Statutory Construction: Intent.** The basic principle of all statutory construction is the legislative intent. This is true whether the intent is drawn from the words of the act or extrinsic aids are used to find it. If there is an ambiguity or uncertainty, then extrinsic aids may be invoked to ascertain the meaning, and these are various.

4. ———: ———: ———: **In the Light of Existing Law: Extra-Territorial Operation.** The Legislature in enacting a law is presumed to do so in reliance upon the assumption that it will be interpreted in the light of existing law; and one of the fundamental principles of the existing law at the time the Collateral Inheritance Tax Law excepted charities from taxation, was that a statute would prima-facie be declared to be operative only as to persons and things within the territorial jurisdiction of the law-making body enacting it; and when that rule is applied to that exception in the statute, it must be held that property devised for charitable uses outside the State is not exempt from the tax.

*Held*, by WALKER, J., dissenting, with whom WOODSON and BOND, JJ., concur, that it was the purpose of exemption from the tax which the Legislature had in mind, and not the location of the benevolence to be aided; and the statute is clear, and exempts from the tax property granted or given for educational, charitable or religious purposes, in total disregard of their location, and the courts are not authorized to read into it a clause limiting it to charities located in this State.

Appeal from Nodaway Circuit Court.—*Hon. William C. Ellison,* Judge.

REVERSED AND REMANDED.

*John T. Barker,* Attorney-General, *George Pat Wright* and *F. C. Donnell* for appellants.

(1) A fundamental principle of statutory construction is that the real intention of the Legislature must prevail. Black on Interpretation of Laws (2 Ed.), p. 180; Verdin v. St. Louis, 131 Mo. 26; Church of Holy Trinity v. U. S., 143 U. S. 457; Perry v. Strawbridge, 209 Mo. 621; Decker v. Diemer, 229 Mo. 296;

State ex rel. v. Walker, 240 Mo. 708. (2) In the construction of a statute the real intention of the Legislature is ascertained by the light of the common law and with reference to its cognate or allied principles. Johnson v. Fluetsch, 176 Mo. 452. (3) The common-law principles of construction applicable to the case at bar are: First, the Legislature will be presumed to have acted "consonant to reason and good discretion." Second, the Legislature will be presumed, in enacting a statute, to have done so with a knowledge of existing law and to have passed the statute relying upon and knowing that it will be interpreted by the rules of existing law. Three of the cardinal principles which are existing now and were at the enactment of Sec. 309, R. S. 1909, are: (a) That a statute is *prima-facie* confined in its operation to persons within the territorial jurisdiction of the Legislature which enacted it. State ex rel. v. Wright, 251 Mo. 343. (b) That general words are not to be so construed as to alter the previous policy of the law unless no sense or meaning can be put upon them consistent with the intention of preserving the existing policy unchanged. (c) That in order for legislation to relieve any species of property from its proportion of taxation such legislation should be so clear that there can be neither reasonable doubt nor controversy about its terms. Riesterer v. Land Co., 160 Mo. 141; Beale on Cardinal Rules of Interpretation, p. 232; State ex rel. v. Wright, 251 Mo. 343; Jeffrys v. Boosey, 4 H. of L. Cas. 815; Black on Interpretation of Laws (2 Ed.), p. 107; Sutherland on Statutory Construction, sec. 513, and p. 1004; 12 Am & Eng. Ency. Law (2 Ed.), 285, 292; Minot v. Leman, 20 Beav. 269; State ex rel. v. Johnston, 214 Mo. 656; State ex rel. v. Casey, 210 Mo. 235; Ford v. Land Co., 164 U. S. 662; Fitterer v. Crawford, 157 Mo. 51. (4) Guided by these principles Sec. 309, R. S. 1909, should be so construed as to exempt from taxation only such charitable, religious or educational pur-

poses as are to be carried out in the State of Missouri, for had it been the intention of the Legislature to exempt foreign charities as well as domestic the statute would have so stated. Riesterer v. Land Co., 160 Mo. 154; In re Prime, 136 N. Y. 347; Ross v. Kentucky, 111 Mo. 18; In re Speed, 216 Ill. 23; Board of Ed. v. Illinois, 203 U. S. 553; University v. Hancock, 69 N. J. Eq. 470; In re Hickoks, 78 Vt. 259; Humphrey v. State, 70 Ohio, 67; Davis v. Treasurer, 208 Mass. 343; People v. Society, 87 Ill. 249; Carter v. Whitcomb, 74 N. H. 482; Venable v. Railroad, 112 Mo. 103.

*Frederick N. Judson, amicus curiae.*

*Ira K. Alderman* and *M. E. Ford* for respondent.

(1) Sec. 309, R. S., 1909, is unambiguous, hence: (a) In order to ascertain the legislative intention, the primary rule is that a statute is to receive that meaning which the ordinary reading of its language warrants. 26 Am. & Eng. Ency. Law (2 Ed.), 598, sec. VI, 4-a (1). (b) If the language is clear and admits of but one meaning, the Legislature should be intended to mean what it has plainly expressed, and there is no room for construction. Seldon v. Hall, 21 Mo. App. 452; St. Louis, etc., R. Co. v. Clark, 53 Mo. 214; United States v. Fisher, 2 Cranch (U. S.), 386; Swarts v. Siegel (C. C. A.), 177 Fed. 13; Johnson v. Railroad Co. (C. C. A.), 177 Fed. 462; Woodbury v. Berry, 18 Oh. St. 456; Tynan v. Walker, 35 Cal. 634; Rich v. Keyser, 54 Pa. St. 86; see also p. 182, *ibid;* U. S. v. Hartwell, 6 Wall. (U. S.) 395. (c) The plain and sound principle is to declare *ita lex scripta est,* although so understood the statute leads to an absurd and mischievous result, or to consequences not contemplated by the Legislature, for courts are not to inquire as to the motives of the Legislature, nor to depart from any meaning clearly conveyed in unambiguous words, because the statute, as

literally understood, appears to lead to unwise consequences or to contravene public policy. Coffin v. Rich, 45 Me. 507, 71 Am. Dec. 559; United States v. Fisher, 2 Cranch, 399; Farrell Foundry v. Dart, 26 Conn. 376. (2) The rule of statutory construction of statutes purporting to grant exemptions from general taxation are to be strictly construed against the claimant and in favor of the government, but special tax laws are to be construed strictly against the government and most favorable to the tax payer. Dos Passos (2 Ed.), sec. 32, pp. 74 and 75; 27 Am. & Eng. Ency. Law (2 Ed.), 340, Sec. III; Lambart, Appellant, 88 Me. 587; Cooley, Taxation (2 Ed.), 74. (a) No authority predicated on property tax can be applicable to case at bar for the tax in question is not a property. State ex rel. v. Henderson, 160 Mo. 217. (b) A succession tax is a special tax and the rule is that special tax laws are to be considered strictly against the government and favorably to the tax payer. Lambart, Appellant, 88 Me. 587; 27 Am. & Eng. Ency. Law, 340; Hooper v. Bradford, 178 Mass. 95; Matter of Fayerweather, 143 N. Y. 114; Cooley, Taxation (2 Ed.), 205; Tucker v. Ferguson, 22 Wall. 527; In re Enson's Will, 113 N. Y. 174. (3) The Missouri statute is different from the statutes of all other States. Therefore the constructions put upon the statutes of other States by the courts of those States do not aid in construing our statute in this case, further than to show the courts' adherence to the language of their statutes, and by contrast, as will be contended, aid the respondent by points or marked and material differences, and in showing that the purpose of the Missouri statute is directly met in the admitted purpose of the testator's devise.

GRAVES, J.—This action arose in the probate court of Nodaway county, and is one wherein it is sought to collect certain collateral inheritance taxes from the estate of James Quirk, deceased. The case

involves the construction of the exemption clause of section 299 of article 16 of chapter 1, Revised Statutes 1899. The case in both the probate and the circuit court of Nodaway county was tried upon the following agreed statement of facts:

## "AGREED STATEMENT OF FACTS.

"It is agreed by and between the parties hereto that the facts in the above cause are as follows:

"That James Quirk prior to and at the time of his death was a resident of the State of Illinois; that he died testate on the 13th day of November, 1906, seized of a three-fourths interest in fee in the following described real estate, lying, being and situated in the county of Nodaway, in the State of Missouri, to-wit: An undivided three-fourths interest in and to the north half of the southeast quarter of section ten, in township sixty-three north, of range thirty-six west of the principal meridian, in Nodaway county, Missouri; that by the last will and testament of the said James Quirk, dated the 18th day of November, 1902, he bequeathed and devised to Mary Quirk, his sister, also a resident at all times herein mentioned of the State of Illinois, the use, rents, income and profits of all his estate, both real and personal, including the above lands, so long as she should live; that all the remainder of his estate, including the above lands, both real and personal which should be left after the death of his said sister, Mary Quirk, and after paying the legacies therein mentioned and expenses of administration, he directed his executors, named in said will, to convert into money, and to pay the same over to the Bishop of Peoria, Illinois, the same to be used by him for the use and benefit of the Church of the Visitation of Kewanee, Illinois, and the Dominican Sisters' School of Kewanee, Illinois, as he might deem best, and he, the said James

Quirk, by his said last will, bequeathed the said remainder of his estate so converted into money to the said Bishop of Peoria, Illinois, in trust for such use and purposes; that on the 5th day of August, 1907, the said Mary Quirk died; that on the death of said Mary Quirk, all the rest and residue of the property of James Quirk, including the lands above, when converted into money by his executors, and after paying legacies and expenses of administration, passed to and vested in the Bishop of Peoria, Illinois, in trust, for the uses and benefit of the Church of the Visitation, of Kewanee, Illinois, and the Dominican Sisters' School of Kewanee, Illinois; that on the 18th day of May, 1908, Joseph Jackson, Sr., a resident of the city of Maryville, Nodaway county, Missouri, was by the probate court of Nodaway county, Missouri, duly appointed as administrator, with will annexed, of the estate of said James Quirk, in Nodaway county, in the State of Missouri; that said Joseph Jackson, Sr., as such administrator, under the powers and terms of the will of said James Quirk, sold the lands above described for the sum of $6400; that the interest in the same of the said James Quirk amounted to three-fourths of said sum, or $4800; that sum was and is the fair market value of said lands; that the debts and legacies of said estate have all been paid except expenses of administration, which amounts to $550, and which amount said administrator now retains in his hands; that the said Joseph Jackson, Sr., as such administrator of said estate, has paid to the Bishop of Peoria, Illinois, the sum of $4250.

"It is further agreed that the Bishop of Peoria is not a resident of the State of Missouri, but is a resident of the State of Illinois; that the Church of the Visitation and the Dominican Sisters' School are educational, charitable and religious institutions exclusively, devoted to such purposes in the State of Illinois; that said Church of the Visitation and the Dominican

Sisters' School are located in the city of Kewanee, in the State of Illinois.

"It is further agreed that if the court decides that said bequests to said Church of the Visitation and Dominican Sisters' School are liable to pay a collateral inheritance tax, that the amount of such tax is $212.50, and the penalties of $55.25."

Upon these facts the probate court found that the property was not exempt from the collateral inheritance tax, and the administrator appealed to the circuit court. The circuit court found that it was exempt, and reversed the judgment of the probate court and from that judgment the opposing parties have appealed and invoke the judgment of this court. The case is one purely of law.

I. At the institution of this suit the statute involved was section 299, Revised Statutes 1899. The statute has not been amended, and is now

Collateral Inheritance Tax.

section 309, Revised Statutes 1909. The statute so far as material reads:

"All property which shall pass by will, or by the intestate laws of this State from any person who may die seized or possessed of the same while a resident of this State, or, if decedent was not a resident of this State at the time of death, which property or any part thereof shall be within this State, or any interest therein or income therefrom, which shall be transferred by deed, grant, bargain, sale or gift, made or intended to take effect in possession or enjoyment after the death of the grantor, bargainor, vendor or donor, to any person or persons, or to any body politic or corporate, either directly or in trust or otherwise, or by reason whereof any person or body politic or corporate shall become beneficially entitled in possession or expectancy, to any property or the income thereof, other than to or for the use of the father, mother, husband, wife, legally

adopted children, or direct lineal descendant of the testator, intestate, grantor, bargainor, vendor or donor, *except property conveyed for some educational, charitable or religious purpose exclusively,* shall be and is subject to the payment of a collateral inheritance tax of five dollars for each and every one hundred dollars of the clear market value of such property.''

We have italicized the clause which is the crux of this case. Under the agreed facts the beneficiaries of the fund bequeathed by James Quirk are educational and religious organizations, and the funds go to educational and religious purposes. The only question is whether it was the intent of our law to grant a tax exemption for charities located outside of Missouri. Differently stated did the Missouri Legislature intend this exemption clause of our statute to apply to all charities wherever located, or was it the intent to have it apply only to resident charities. We use the word ''charities'' to cover all the exempted subjects named in the statute. We have concluded that the legislative intent was to make this exemption apply to Missouri ''charities'' alone, and for reasons which follow.

II. The following rules of statutory construction are invoked by the respondents.

First, it is said that where the language of the statute is clear and unambiguous the intent of the General Assembly must be found in the **Construction of Statute.** statute. Secondly, that there is no presumption against exemption from special taxation, and that the rule of presumption against tax exemptions in general taxation has no application to this case. Thirdly, it is contended that by the use of the words ''educational, charitable or religious *purposes*'' the Legislature meant to make our law different from the laws of other states, wherein the exemption is extended to ''institutions'' or ''corporations.''

In other words, the word *"purposes"* is emphasized
by respondents, as having a peculiar and saving grace
in our statute.  And, fourthly, it is conceded that the
legislative power of the State is limited to persons
or property within the State, but it is averred that such
principle has no application to the case at bar "where
it is sought by judicial construction to limit by tax-
ation the right of a citizen of another State to exercise
his charitable disposition over his property for the
benefit of the institutions in his own home."

We are not prepared to say that the statute is
so plain in terms as not to require judicial construc-
tion as to the legislative intent.  From statements in
the briefs, and in oral arguments, it appears that the
circuit courts of the State have not been of one voice
in the construction of the statute.  In most instances
such courts have held that it is not the legislative in-
tent to exempt foreign charities, or charities outside
of the State.  In the case at bar the learned circuit
judge took a different view, and in so doing was op-
posed in judgment to some of his fellow circuit judges
of the State, as well as the probate judge of his county.
When the limits and bounds of the legislative acts are
considered, it is by no means clear what was intended
by the act in question.  The words used must be con-
sidered from all the surroundings.  But this matter
we discuss later.  Suffice it now to say that we believe
the wording of the statute is such as to call for judicial
determination of the legislative intent, as to the sub-
jects of exemption, and on this theory we shall pro-
ceed.

III.  We do not deem it material to discuss the
question as to whether or not the general presumption
against exemption from taxation ap-
Extra-Territorial
Operation of
Statute.
plies to this kind of a case.  That pre-
sumption is a valuable one in the
trial of cases, because it forces those

claiming the exemption to show that the property sought to be exempt clearly falls within the exempted class. But if we find that the legislative intent in the instant law was not to extend the exemption to "charities" outside of the State, then there is an end to this controversy, and the reasoning as to whether or not the presumption as to exemptions applicable in general taxes applies to this case, is but a side question, upon which there is learning upon both sides. If the law is one requiring judicial construction as to the legislative intent, as we hold, then a determination of that question will forego all other questions.

The basic principle of all statutory construction is the legislative intent. This is true whether such intent must be drawn from the words of the act, or whether we go to extrinsic aids to find the intent. [Black on Interpretation of Laws (2 Ed.), p. 180; Verdin v. St. Louis, 131 Mo. 26; Sedalia ex rel. v. Smith, 206 Mo. l. c. 361; Perry v. Strawbridge, 209 Mo. 621; Decker v. Diemer, 229 Mo. 296.] So at the very threshhold of all statutory construction we are met with the paramount question, "What was the legislative intent?" If no ambiguity appears, the courts go to the language of the law itself. If there is an ambiguity or uncertainty, then extrinsic aids may be used in determining the meaning, and these are various. [State ex rel. v. Smith, supra.] In getting at the legislative intent one of the prime considerations is the condition of the law at the time the new law was enacted, because words, general in meaning, are often used in legislative acts, because the law-making power knows that such broad general meaning is curtailed and limited by general laws, rules of law or public policies. To these we must ofttimes go to gather the real intent. As stated, one of the things always in the mind of the legislative body is that their language will be construed in the light of existing laws, rules of law and public

policies, and this perhaps accounts for the use of many general terms, rather than more limited ones.

To start with in this case, it must be presumed that the General Assembly in passing this law, and making this exception, did so relying upon the fact that it would be interpreted in the light of existing law. One of the fundamental principles of the then existing law was that a statute would prima-facie be declared to be operative only as to persons and things within the territorial jurisdiction of the law-making power which enacted it. In the very recent case of State ex rel. v. Wright, 251 Mo. l. c. 343, our brother FARIS has well stated the rule:

"Besides this *reductio ad absurdam,* which would seem to settle this contention, certain presumptions confine us to our own State. A statute is prima-facie confined in its operation to persons and conditions within the territorial jurisdiction of the Legislature. [Beale on Rules of Legal Interp., p. 232.] 'Prima-facie every statute is confined in its operations to the persons, property rights or contract which are within the territorial jurisdiction of the Legislature which enacted it.' [2 Lewis's Sutherland on Stat. Con. 513.] We elect to our offices our own citizens, of our own State, under the provisions of our own laws. We never elect by direct suffrage a citizen of another State to any office; these are the elections at which the election commissioners act, and the elections which they are required to hold. We conclude then that it is too clear for argument that by the 'leading party politically opposed to that to which the Governor belongs' is meant the 'leading party' in this State."

In that case we were called upon to determine what was meant by the general term "leading party politically opposed to the Governor." It was urged that we should give the phrase such a meaning as to say that the strongest party, nationally speaking,

which was opposed to the political principles advocated by the Governor, was the "leading party" within the meaning of the act then under consideration. This we declined to do, because of the general existing law which confined all laws to persons and things in the State. The same doctrine should apply here. We should say that the Legislature in using the general terms, "some educational, charitable or religious purpose exclusively" had reference to such *charities* as were within the territorial limits of the lawmaking power.

In other words the general doctrine seems to be that prima-facie the law should be held to have reference to persons and things within the territorial jurisdiction of the body enacting it, unless it clearly appears that another and different purpose should be gathered from the act itself. Presumptively the law making power is acting in the interest of persons and things within the State. Presumptively the lawmakers in this case were looking after the interests of Missouri, and not legislating for *charities* in other States, and especially is this so when they were unloosing our own purse strings by this exemption clause. It means, if given the construction urged by the respondent, that a Missouri lawmaking body was releasing its hold upon a source of revenue for charities outside of the State. To give it that construction, would in effect be to say that the lawmaking body was taking Missouri money to support foreign charities. In Ross on Inheritance Taxation, sec. 146, it is said:

"It has been contended that the exemption of charitable institutions from inheritance taxation applies to all such institutions, regardless of their location within or without the State granting the exemption, for, it is argued, the exemption is in recognition of the beneficent purpose of these institutions, and inasmuch as the purpose is common to them all, wherever located, the exemption should be universal. But

the courts have not yielded to this argument. They have held, with unanimity it is believed, that in the absence of any language plainly indicative of a different intent, the Legislature must be deemed to have made the exception for the benefit of its own institutions, only, and that foreign corporations, or institutions without the State, must pay the inheritance tax, although exempt in the State of their domicile, and although some of their charitable work and enterprise are carried on within the State enforcing payment of the tax.''

So, too, as said by ANDREWS, C. J., in the Matter of Estate of Prime, 136 N. Y. l. c. 362:

''It is the policy of society to encourage benevolence and charity. But it is not the proper function of a State to go outside of its own limits and devote its resources to support the cause of religion, education or missions for the benefit of mankind at large. The argument may have force, that the State might, consistently with its proper function, give immunity from taxation to some of the foreign corporations engaged in the work of education or charity. But, however, this may be, we are convinced that the statute of 1891 has no application to foreign corporations, and having reached that conclusion our duty is ended.''

Again in Carter v. Whitcomb, 74 N. H. l. c. 489, it is said:

''When however, an auxiliary body like the Auxiliary of the Woman's Foreign Missionary Society, though connected with a local church and existing within the jurisdiction as an association, seeks as its principal object 'the evangelization of heathen women' and the raising of funds for that purpose alone, it is difficult to discover how the public represented by the people of this State is benefited by the supposed benevolence. Even if there are 'heathen women' in our midst, this society can do nothing for their enlightenment and civilization; for,

as found in the case, none of its funds 'are or can be devoted to charitable objects within the State of New Hampshire.' Its money may be sent, and presumably the principal part of it is sent, to assist in the conversion of people, living in remote parts of the earth, from their native religion to that of Christianity. The expenditure of large sums of money for the enlightenment upon religious subjects of the natives of the antipodes evidently was not one of the objects the Legislature intended to encourage, when in 1895 the property of charitable associations 'devoted exclusively to the uses and purposes of public charity' was exempted from taxation, or when in 1905 legacies to such associations 'in this State' were exempted from the inheritance tax. The benefit to the public of this State of such a trust is so visionary, problematical, and uncertain that it cannot be deemed for the purposes of this case a public charity, without imputing to the Legislature motives which it is reasonably certain they did not entertain. The State is not itself a charitable institution, and does not authorize its representatives to expend the public money, by exemptions from taxation or otherwise, for purposes having little or no relation to the welfare of the inhabitants of the State. The purpose of such laws is the acquisition of some supposed public advantage. [Opinion of the Court, 58 N. H. 623; Perry v. Keene, 56 N. H. 514.] If it is impossible to see how the public good of the State is promoted by a claimed exemption from the tax burden, it cannot be inferred that the Legislature intended such a result from language which does not necessarily require such a construction. 'If a statute is capable of two meanings, and one is more reasonable and therefore more probable than the other, this fact is necessarily considered, with all other competent evidence, on the question of intent. The evidence of intention may include various inherent probabilities and the probative force of many circumstances, as well as

the literal sense of the words used. When the meaning is found by giving due weight to everything that legally tends to prove it, it is not a matter of discretion whether it shall be adopted or rejected. If the evidence establishes the fact that the literal sense is not the true sense, a literal construction would be an alteration of the law.' [Opinion of the Justices, 66 N. H. 629, 651.]''

And further on at page 491, in the same case it is said:

"As a matter of practice, it has devoted substantially all of its funds to the support of charities outside of New Hampshire, and presumably it will continue that practice. If its object was to maintain an orphans' home or a hospital for poor people on the Pacific coast, and all its resources were devoted to that purpose, the public benefit of such a charity in New Hampshire would not be apparent. Perhaps it would be no more evident than the maintenance of missions in China. *Its relation to the public interests of this State, which alone the Legislature is ordinarily presumed to have in view, would be so slight, arising merely from a general community of interstate interests, that it is not probable such a charity would be the object of legislative bounty and encouragement. Nor should we expect to find the lawmakers exempting from the common burden of taxation a society whose purpose is, as established by long practice, to use its funds exclusively in the promotion of charities in other states.* If some substantial local benefit accrues of a public nature by the actual use of some of its funds for charitable purposes in this State, it might be found that it was included within the exemption, though it used the balance of its funds in other jurisdictions. [Balch v. Shaw, 174 Mass. 144.] The question would be, whether its charity was of such a character and so administered as to be of any substantial benefit or advantage to the public of this State; and this would

be principally a question of fact, to be determined upon competent evidence." (The italics are ours.)

Quite a number of cases are cited by Ross in his work on Inheritance Taxation, supra, but these suffice to illustrate the rule and the reasons of the rule. There is no deep-seated meaning in the use of the word *"purposes"* in our act which can avail the respondents.

Under the great weight of the case law we are constrained to hold that it was not the legislative intent by the exemption clause of our statute to include property conveyed for educational, charitable or religious purposes outside of this State. In this view of the law other questions are immaterial.

From this it follows that the property in question is subject to a collateral inheritance tax under section 309, Revised Statutes 1909, and the circuit court was wrong in holding *contra.*

The judgment is reversed and the cause remanded to be proceeded with in accordance with this opinion. All concur except *Woodson, Bond* and *Walker, JJ.,* who dissent in an opinion by *Walker, J.*

WALKER, J.—I do not concur in the majority opinion. The statute (Sec. 299, R. S. 1899, now Sec. 309, R. S. 1909) is general in its terms and unmistakable in its meaning. Under its provisions property which passes by deed, grant, bargain, sale or gift, to other than the father, mother, husband, wife or natural or adopted children, is subject to the collateral inheritance tax, except when conveyed for educational, charitable or religious purposes. These clear and definite provisions do not, in my opinion, require adventitious aid in their interpretation. There is no indicaton that the exemption of the property conveyed for the purposes mentioned was to be limited to that bequeathed to benevolences located within the State. If the terms of the statute demanded a liberal interpretation, it certainly should be given when the purpose of the ex-

emption is beneficent in its nature; but the terms of the statute are broad and clear enough in themselves without recourse to any rule in regard to liberal interpretation. The framers of the law having in view the encouragement of bequests and grants for the general good, did not intend that the statute should be limited to geographical lines; and it is immaterial whether the property granted or bequeathed passes to an institution within the borders of Missouri, or to one in a sister State or a foreign country; it is the purpose of the grant which the Legislature had in mind, and not the location of the benevolence to be aided. If I am correct in my conclusion, then it is necessary, before the statute can be construed as it has been by the majority, for these words: "within the State of Missouri," to be inserted after the exceptions in the statute, so that the same shall read as follows: "except property conveyed for educational, charitable or religious purposes exclusively within the State of Missouri." Under no rule of construction with which I am familiar, is this interpolation authorized.

A tax, under any view that may be taken of it, is a burden; an express statute is necessary to authorize its imposition; here, instead of such a statute, we have an express exemption. Under this state of facts, I am of the opinion that the taxation of the property specified as exempt under section 309, supra, is unauthorized.

So much for the grounds of my difference with my brethren as to the rules of construction applicable to this statute.

*Woodson* and *Bond, JJ.,* concur herein.