IN RE ESTATE OF CHARLES C. SAUTTER.
KEITH COUNTY, APPELLEE, v. METHODIST CHILDREN'S HOME OF BEREA, OHIO, ET AL., APPELLANTS: HENRY HARMS ET AL., EXECUTORS, APPELLEES.

5 N. W. (2d) 263

FILED JULY 31, 1942. No. 31329.

44

*McConnell & Leaton, Conrad D. Philos* and *Beeler, Crosby & Baskins,* for appellants.

*Zelma D. Derry, R. L. Smith* and *Beatty, Maupin, Murphy & Derry, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

MESSMORE, J.

This is an appeal from a decree of the district court for Deuel county, entered May 23, 1941, reversing and modifying an assessment of inheritance taxes in the estate of Charles C. Sautter, deceased, entered by the county court of Deuel county against the legatees and devisees named in the will of the decedent. Charles C. Sautter died November 6, 1938, a resident of Deuel county, Nebraska, possessing real estate located in Keith county; also considerable personal estate whose situs was his residence and legal domicile. His last will and testament was admitted to probate in the county court of Deuel county January 6, 1939. The pertinent provisions of the will are clauses three and four:

"Third: In compliance with the terms and provisions of the last Will and Testament of George L. Sautter, deceased, wherein I was given a life estate in certain property, and required to select and designate during my lifetime certain charitable institutions to receive the same, I hereby give, bequeath and devise unto The World Service Agencies of the Methodist Episcopal Church, Chicago, Illinois, the sum of Four Thousand One Hundred Six Dollars and Eighty-three cents ($4,106.83) and real estate" described in the clause.

"Fourth: I give, bequeath and devise unto the German Methodist Orphan Home of Berea, Ohio, the Central Wesleyan Orphan Home of Warranton, Mo., the Nebraska Children's Home Society, of Omaha, Nebraska, the Child Sav-

ings Institute of either Omaha or Lincoln, Nebraska, The World Service Agencies of the Methodist Episcopal church, Chicago, Illinois, and the Women's Foreign Missionary Society of the Methodist Episcopal Church, Topeka Branch, all the rest and residue of my estate, both real, personal or mixed, of whatever nature or wherever found, to be and become theirs absolutely, viz., to share and share alike, the real estate so devised to descend to them and their successors and assigns forever in fee simple."

The county court decreed that the Topeka Branch of the Women's Foreign Missionary Society of the Methodist Episcopal Church, a corporation incorporated in Kansas (hereinafter referred to as the Topeka Branch) was not subject to the payment of such tax. On appeal by Keith county to the district court, that court held the Topeka Branch liable for payment of an inheritance tax. The appellants assign this holding of the district court as error, in that the Topeka Branch is a domesticated corporation and, therefore, exempt.

The record contains a stipulation that the Topeka Branch has complied with the provisions of section 24-222, Comp. St. 1929, reading as follows: "Any corporation organized under the laws of any other state * * * which has filed * * * with the secretary of state of this state, a true copy of its charter or articles of association, shall, on filing with the secretary of state a certified copy of a resolution adopted by its board of directors, accepting the provisions of this article, be and become a body corporate of this state."

Relying on the stipulation, the Topeka Branch confined its proof to a certified copy of its charter, received in evidence to show that the society was a religious and charitable organization. The appellee is not in a position to question the stipulation.

"A formal, judicial stipulation by the parties as to facts, so long as it stands, is conclusive between them, and cannot be contradicted by evidence tending to show the facts otherwise." Le Barron v. City of Harvard, 129 Neb. 460, 262 N. W. 26. See 5 Wigmore, Evidence (2d ed.) 604, sec. 2588.

The district court held that, even though the Topeka Branch had been domesticated by complying with the provisions of section 24-222, Comp. St. 1929, nevertheless such corporation, as a matter of law, is not entitled to any greater exemption from inheritance tax laws of this state than it would be if the articles of incorporation had never been filed in this state.

Is the Topeka Branch a domesticated corporation within the terms of such statutory exemption?

Section 77-2201, Comp. St. Supp. 1941, reads in part: "Provided further, that all bequests, legacies, devises, or gifts, to or for the use of any corporation, organization, association, or foundation organized and operated exclusively for religious, charitable or educational purposes, no part of which is owned or used for financial gain or profit to either the owner or user or inures to the benefit of any private stockholder or individual, or to a trustee or trustees exclusively for such religious, charitable or educational purposes, shall not be subject to any duty or tax, and no such duty or tax shall be assessed or collected after the taking effect of this act irrespective of the time of the death of the decedent or the fact of the pendency of his or her estate."

The Topeka Branch is a religious and charitable organization. No part of the funds received by it under the foregoing statute is used for financial gain or profit. Exhibit 1, a certified copy of its charter, shows: "That this Corporation is organized not for profit, and that the purposes for which it is formed are: Missionary Work." There is no proof or contention to the contrary.

In *In re Estate of Rudge*, 114 Neb. 335, 207 N. W. 520, this court held: "Statutes exempting certain legacies from an inheritance tax should be strictly construed. To be exempt from an inheritance tax, a legacy must come within the strict letter of the statutory exemption." Followed in *In re Estate of Robinson*, 138 Neb. 101, 292 N. W. 48.

In 23 Am. Jur. 396, sec. 389, it is said: "Even though a foreign corporation which complies with or accepts the terms of state legislation providing for domestication only

may explicitly be termed a domestic corporation by such statutes, and while it may become such in many respects and be treated as such for local purposes, in other respects it retains the character of a foreign corporation, and its status within the state is not equivalent to that which it would have were the same association created a separate, original corporation therein." On page 398, sec. 392, it is said: "Mere domestication of a foreign corporation does not give it a legal domicile within the domesticating state. A state is powerless to confer, by domestication, any local citizenship upon a foreign corporation which would have the effect of impairing its constitutional rights as a citizen of the state of its creation."

A leading case reflecting the rule announced above is *In re Thomas' Estate*, 185 Wash. 113, 53 Pac. (2d) 305, wherein the will in question provided: "All the rest, residue and remainder of my estate both real and personal and wheresoever situate, I give, devise and bequeath to The Hutton Settlement, a corporation organized and existing under and by virtue of the laws of the state of Washington, and The Salvation Army of Spokane, in equal parts to each, said bequest to The Salvation Army of Spokane to be distributed by it to the different institutions working under its management and control in said city." The Salvation Army was a California corporation, having an office in Spokane, Washington. It set out its corporate existence, an organization under the laws of the state of California, and pleaded its authorization to do business in the state of Washington as a foreign corporation. The probate court declared the property exempt. The statute involved was Rem. Rev. Stat., sec. 11218, and set forth certain gifts to certain organizations for charitable purposes, enumerating them, which were exempt from the inheritance tax; therefore, the gift was, in its terms, made to the Salvation Army of Spokane for local purposes. In the opinion it was said (p. 118) : "We must resolve the question of law involved upon principle—by considering what it would be in the power of the corporation to do, rather than what it may be disposed to do. While we may assume

that the California corporation would faithfully execute the provisions of the will in the use of the property, yet the state would have no visitorial power enabling it to enforce compliance. True, the corporation is registered in the state and permitted to do business therein, but it is not compelled to remain in the state." The order exempting the corporation from payment of inheritance tax was reversed, with instructions to deny respondent's petition for exemption.

Similar holdings are reflected by the following cases: *Alfred University v. Hancock,* 69 N. J. Eq. 470, 46 Atl. 178; *In re Estate of Quirk,* 257 Mo. 422, 165 S. W. 1062; *In re Estate of Speed,* 216 Ill. 23, 74 N. E. 809, affirmed in *Board of Education v. Illinois,* 203 U. S. 553, 27 S. Ct. 171; *Humphreys v. State,* 70 Ohio St. 67, 70 N. E. 957; *Carter v. Whitcomb,* 74 N. H. 482, 69 Atl. 779; *Minot v. Winthrop,* 162 Mass. 113, 38 N. E. 512; *In re Hickok's Estate,* 78 Vt. 259, 62 Atl. 724; *State v. Holcomb,* 85 Kan. 178, 116 Pac. 251; 26 R. C. L. 226, sec. 197. It is evident that a majority of the states that have adjudicated the question adhere to the view that tax exemptions to charitable institutions are confined to domestic corporations.

To quote from *In re Prime's Estate,* 136 N. Y. 347, 362, 32 N. E. 1091, 1095: "The argument that gifts for the promotion of charity, education and religion should be encouraged and should not be diminished by exactions of the state, presents a moral and political rather than a judicial question. It is the duty of courts in the interpretation of statutes to declare the law as it is, and the interests of society are best subserved by a close adherence by courts to what they find to be their plain meaning, neither narrowing the application on the one hand, nor extending the meaning on the other, to meet cases not specified, which may seem to be within the reason of the law."

"The domestication of a foreign corporation * * * is nothing more than the extension to it of the privilege or license as a foreign corporation to do business in the state and its susceptibility to service and suit in the state." *Blue Ridge Power Co. v. Southern Ry. Co.,* 122 S. Car. 222, 115 S. E.

306. See, also, *Magna Oil & Refining Co. v. White Star Refining Co.*, 280 Fed. 52; *Ohio & M. R. Co. v. Wheeler*, 1 Black 286, 17 L. Ed. 130.

The authorities cited and analyzed clearly indicate that the use of the words "domestic corporations" has to do solely with the place of their incorporation, and does not refer to any attempt to comply with statutes providing for the domestication of a foreign corporation. If the foreign corporation be incorporated in any foreign state without regard to what steps it may have taken to gain authority to transact business in the taxing state, it is not considered a domestic corporation, but is held to be a foreign corporation for the purpose of imposing the tax, and the exemption is denied.

The general rule that the domestication of a foreign corporation, as distinguished from reincorporation, does not affect its status as a citizen of the state in which it was originally incorporated and does not make it a citizen of the domesticating state, so far as federal jurisdiction is concerned, has been uniformly followed. See *Foy & Shemwell v. Georgia-Alabama Power Co.*, 298 Fed. 643; *Southern Ry. Co. v. Query*, 21 Fed. (2d) 333; *Carolina & N. W. Ry. Co. v. Town of Clover*, 34 Fed. (2d) 480; *Lightfoot v. Atlantic Coast Line R. Co.*, 33 Fed. (2d) 765.

The district court properly held the Topeka Branch subject to inheritance tax in this state.

The appellants contend: The World Service Agencies of the Methodist Episcopal Church of Chicago, Illinois, is an unincorporated charitable and religious society. It is claimed the exemption granted is to any organization, association or foundation operated exclusively for religious, charitable or educational purposes. The county court so held. Attention is called to section 77-2201, Comp. St. Supp. 1941, above quoted.

The district court found that the World Service Agencies was named as the devisee in the will under discussion, is not a corporation but is, rather, an organization or association of the various executive secretaries of the General Confer-

ence of the Methodist Episcopal Church, with its principal place of business at Chicago; that such devisee holds title to property either in its various members or one or more of its officials in trust for the benefit of various foreign corporations, associations and individuals, and is not such an organization or association as is exempt from the payment of inheritance taxes under the Nebraska law.

The record discloses that the church some years ago created what is known as the "World Service." The World Service Agencies and the World Service Commission are directly allied with World Service and coordinate their efforts in making possible the great scope of activities under the World Service. The interchanging of their respective functions is such that, by cooperation, they unify the efforts of the church in World Service. A minute segregation of the different aspects of the World Service Commission, the World Service Agencies (a trade-name) and World Service is not such that one can exist without the other, under the testimony as presented by the record. Without detailing this testimony, we conclude that the holding of the district court, as hereinbefore set out, is applicable to the evidence in this case with reference to taxing the World Service Agencies. The World Service Agencies is unincorporated; the Methodist Episcopal Church is unincorporated and the World Service Commission is incorporated in the state of Illinois, but, jointly, they make World Service possible.

In the case of *Humphreys v. State*, 70 Ohio St. 67, 70 N. E. 957, the court said (p. 84) : "Exemptions of charitable institutions would relate only to domestic institutions * * * even if the words 'in the state' had been omitted from the statute. It is not a tax upon property, but upon the right to *receive* property and have it transferred."

In the case of *In re Estate of Quirk*, 257 Mo. 422, 165 S. W. 1062, the statute provided for exemption where property was conveyed for educational, charitable or religious purposes exclusively. All other property was taxed. The beneficiaries under the fund were educational and religious organizations and the funds were for such purposes exclusive-

ly. The question involved was: Did the law contemplate an exemption for charities located outside of the state, and was it the legislative intent to apply the exemption clause to all charities wherever located or only to resident charities? The word "charities" covers all of the exempted subjects in the statute. The court decided that the exemption applied only to Missouri charities, holding: "Under the great weight of the case law we are constrained to hold that. it was not the legislative intent by the exemption clause of our statute to include property conveyed for educational, charitable or religious purposes outside of this State." See, also, *Morgan v. Atchison, T. & S. F. Ry. Co.*, 116 Kan. 175, 225 Pac. 1029.

To quote further from section 77-2201, Comp. St. Supp. 1941: "All property, real, personal and mixed which shall pass by will or by the intestate laws of this state * * * to any person or persons or to any body politic or corporate in trust or otherwise, or by reason thereof any person or body corporate shall become beneficially entitled in possession or expectation to any property or income thereof, shall be and is subject to a tax," etc.

The World Service Agencies is an association. An association, as defined by Bouvier's Law Dictionary (Rawle's 3d Rev.) p. 269, is "The act of a number of persons in uniting together for some purpose. The persons so joining." In the supplement thereto it is defined as a number taken collectively. The World Service Agencies, as such, was a resident outside of the state of Nebraska and exists as an auxiliary body of the World Service Commission of the Methodist Episcopal Church, which is a nonresident corporation.

Without repeating, but referring to the language used in *In re Estate of Rudge, supra,* we conclude that under the circumstances the World Service Agencies is such an organization or society that is not exempt from inheritance tax and that part of the statute providing for exemption of charitable, religious and educational organizations, associations, or foundations, refers, under a strict construction thereof, to such corporations, organizations, associations

or foundations organized and operated exclusively for religious, charitable or educational purposes within the state of Nebraska and not a nonresident thereof, and that such was the legislative intent.

Appellants contend: The foreign corporations, devisees of real estate under the will, were prohibited from acquiring title thereto, and, such devolution of title being prohibited, the will was void and the property passed to the heir at law as intestate property.

The foreign corporations were residuary legatees and devisees, except the World Service Agencies who, in addition, received a specific bequest and devise. The trial court held that, by the terms of the will, the title to real estate located in Nebraska was conveyed directly to the foreign corporations named therein for the purposes for which such corporations were formed, and not in the form of any trust, but that the provisions of the laws of Nebraska prohibiting a foreign corporation from holding title to real estate in Nebraska did not operate to exempt such conveyance by will from the payment of inheritance taxes, and such corporations acquired sufficient title to the real estate to enable them to convey a valid title to their respective shares therein to a *bona fide* purchaser, unless the conveyances made by such will were set aside at the suit of the heir at law or of the state prior to such conveyance to purchaser.

Herbert A. Sautter and his wife instituted a suit to have the will construed. Before a decision was rendered in the case, the residuary legatees and devisees and the World Service Agencies entered into an agreement with the heir, providing that he dismiss the suit and quitclaim to certain named trustees all interest such heir may have in the real estate owned by Charles C. Sautter, or in which he had an interest at the time of his death, with exceptions noted in the contract and not necessary to here state. The contract further provided for the return of certain notes to the heir; the second parties to make, execute and deliver to the heir an assignment of $12,000, to be paid by the executors of the estate as soon as they have collected said sum from the as-

sets of the estate, and which would be a distributive share of the parties of the second part (legatees and devisees). Exhibits 9 and 10 are quitclaim deeds from Herbert A. Sautter and wife, as grantors, to L. A. Devoe and Orrin W. Auman, trustees, conveying real estate described in the will and provided for in the contract.

Appellants cite section 76-502, Comp. St. 1929, reading in part as follows: "Aliens and corporations not incorporated under the laws of the state of Nebraska are hereby prohibited from acquiring title to or taking or holding any land, or real estate, or any leasehold interest extending for a period for (of) more than five years or any other greater interest less than fee in any land, or real estate in this state by descent, devise, purchase or otherwise."

Without setting out the many cases on the subject, they establish that it is the public policy of the state under the cited statute that "it is unlawful for either a private or charitable corporation not organized in this state to take the fee title or to act as trustee for another." *Stork v. Evangelical Lutheran Synod,* 129 Neb. 311, 261 N. W. 552. See, also, *Gould v. Board of Home Missions,* 102 Neb. 526, 167 N. W. 776.

The appellants cite *Lord v. Shultz,* 115 Neb. 33, 211 N. W. 210, wherein this court said:

"Statutes of wills, it has been justly observed, are enabling acts, and prior to the statute of 32 Henry VIII (5 St. at Large, cap. 1) there was no general power at common law to devise land. The power was opposed to the feudal policy of holding lands inalienable without the consent of the lord. Our state has adopted the common law so far as applicable, and also has enacted a statute of wills. It would seem to follow that every person must therefore devise his lands in this state within the limitations of our statute or he cannot devise them at all; in other words, the power to devise must be exercised strictly in accord with the terms and conditions prescribed by the sovereign. *United States v. Fox,* 4 Otto (U. S.) 315.

"It is also to be remembered that an ordinary devisee does

not ordinarily occupy the position of purchaser for value. Nor is the heir of a testator as to land devised subject to estoppels created by deed.

"A will speaks only from the death of the testator; title is never in abeyance, but can be considered as passing only pursuant to a valid devise. Under these circumstances there would appear to be no legal obstructions to an heir rightfully challenging the validity of a devise of (violating) any of the provisions thereof."

Therefore, to develop the appellants' contention, under the authorities this court has taken a position that a devise to a foreign corporation is void even though a conveyance to such corporation would only be voidable. Applied to the instant case, the devise being void, the property passed by the laws of descent to the heir, and the inheritance taxes on such real estate can only be assessed against him. The cited authorities are unquestioned and apply to the existent situation in each case. A review of this record adequately discloses in what manner the appellants considered their rights.

The World Service Agencies, one of the defendants, in its answer admits that the will in question was admitted to probate and letters testamentary issued; that the World Service Agencies and such other defendants received certain gifts of cash and real estate under the will and an undivided one-sixth interest in real estate therein described; and that such answering defendant took from the estate as legatee and devisee. The prayer of the answer is that such defendant's share derived from the estate is not liable for any portion of the inheritance tax to be assessed against the estate.

Referring to the contract, the heir and his wife agreed to make no claim against the estate except as set forth in paragraph two of the will, which contains a bequest and devise to him. One of the trustees named in the contract was treasurer of the World Service Commission, as above stated. The will was admitted to probate January 6, 1939. The contract, dismissing the suit for construction of the will, was signed December 13, 1939. The real estate transferred by the heir to the appellants, as provided for in the contract,

was appraised in excess of $35,000. The heir had a contended claim of inheritance of personal property. There must have been a reason to induce the heir to dismiss his action to construe the will, and likewise some reason on his part to so dismiss. This was because the appellants claim they had an interest under the will and would exert their efforts to enforce the same.

This court in *Lord v. Shultz, supra,* held: "Although a corporation may have acquired real estate in such a manner as to render it subject to be escheated to the state by proper action begun for that purpose, yet if such corporation shall, prior to the commencement of such proceedings to escheat, make a *bona fide* sale or conveyance of said real estate for value, the purchaser at such sale will take a good title thereto." It is apparent that the appellants had some kind of a title that could be disposed of under certain conditions, such as the one above set out.

In *Gould v. Board of Home Missions, supra,* it was held: "The power to raise the question of the right of the corporation to take the property is not confined to the state, but the question may be raised by the heir or next of kin in an action to quiet title." The above holding clearly establishes the right of the appellants to take the property. For this reason, the heir brought the action to construe the will. The appellants paid him $12,000 to dismiss the suit. They obtained his interest which was the dominant and only interest and by so doing eliminated the possibility of escheat proceedings being instituted against them by the state.

As stated in *In re Estate of Rudge, supra*: "It is a familiar rule that statutes exempting property from taxation should be strictly construed, and one contending that his property is exempt from such tax must show clearly that he is within the exceptions provided by statute."

The appellants asserted their interests under the will, duly admitted to probate, and subsequent thereto made the agreement with the heir as hereinbefore noted. The payment of the $12,000 was to come out of the distributive share when partial distribution would be made to those who had a right

to, and were named in the will to receive, such distribution. Clearly, the appellants considered they were taking under the will. This being true, the court's holding is correct.

The appellants further contend that money paid from the estate to an heir in compromise settlement of a will construction case is deductible in the computation of inheritance taxes, and that the appellants are entitled to a deduction in the amount of $12,000 paid to Herbert A. Sautter.

To obtain a compromise of the will construction case, the defendants entered into an agreement whereby they relinquished $12,000 of the personal property bequeathed to them by the will and permitted it to be paid by the executors to the sole heir of the testator. In this connection, *In re Estate of Kierstead*, 122 Neb. 694, 241 N. W. 274, is cited, wherein it was held: "When a will contest has been amicably settled between the beneficiaries named in the will and the heirs at law and they have in good faith stipulated for a decree of distribution in accordance with the settlement, and there is no intent thereby to evade or reduce the inheritance tax, the tax should be computed upon the portion received by each beneficiary under the decree." Appellants contend that, applying this holding to the instant case, it is as though persons named in the will had renounced the property and it had passed by intestacy to the heir. The money paid to the heir under such a compromise is therefore taxed to him as devolution of property under the statute of descent. The case does not turn on the form of the settlement agreement or whether or not a decree of distribution is based thereon, but on whether or not an heir has taken any testate property by descent, and the controlling question is whether the settlement is *bona fide* and not made to evade taxes.

In the case at bar, the trial court held that "such concessions to the said Herbert A. Sautter and such dismissal of such action by the plaintiff therein were not connected with and did not affect any proceedings theretofore or thereafter had with reference to the admission of said will to probate, and that by such written agreement, payment and concessions, the devisees in said will did not in any manner re-

nounce the taking of any property given to any of them by said will."

In the *Kierstead* case, Susan Kierstead died June 13, 1927, in Madison county, leaving a last will and testament devising a portion of her estate to the Methodist Episcopal Hospital of Omaha, the Odd Fellows Home at York, Mother's Jewels Home, a Methodist orphanage at York, and the Womans Home Missionary Society of the Methodist Episcopal Church. A sister and 12 nieces and nephews contested admission of the will to probate. Following a second trial, a settlement was effected, and a stipulation was entered into by which a decree of distribution was entered by the district court. The contestants were awarded $25,010, which was paid into court for them. The appraiser held that such sum was taxable to the legatees under the will, and such assessment was approved by the county court. Upon appeal to the district court such sum was found not taxable as property received by the legatees but taxable against those taking under the decree.

The decision in the above case was based upon the stipulation of settlement; a decree was entered determining and decreeing the distribution of the assets of the estate other than as provided by the will, and the inheritance tax was charged to the recipients on the amounts awarded to and received by them under that decree. In the present instance, all appellants, with the exception of the World Service Agencies, who had a special bequest under the will, were residuary beneficiaries only, and, in settlement of the suit pending for construction of the will, they entered into a contract. There was no stipulation for decree of distribution of the property other than in accordance with the terms of the will. The property passed under the will; the payments were not made as the result of a contest of the will, and resulted in nothing more or less than a bequest to the residuary devisees and legatees and the right of the said Herbert A. Sautter to receive from said estate certain funds that became the property of the appellants by virtue of the will. To be more specific, the appellants assigned what they were

to receive under the will to the extent of $12,000 as fully and completely as though they assigned that sum to a stranger to the will to secure payment of moneys owing by them. The property of the estate still descended and vested in them. The decree of distribution must be based upon the terms of the will. The county court can do nothing other than determine and find in its final decree in the Sautter estate that the appellants received the property granted them under the will. The suit to construe the will was a separate, independent proceeding, as distinguished from the proceedings of probate. The parties inject certain elements into this case with reference to the suit to construe the will which do not appear in the record and are not sustained thereby, and this court does not take judicial notice as to what litigants' counsel may have represented in another action or what pleadings such case contained.

The trial court determined this contention correctly, and the case of *In re Estate of Kierstead, supra,* is not authority for appellants' position.

Appellants next contend that the district court was without jurisdiction to enter a decree and judgment in favor of Deuel county. To determine the provisions of the statute under which an appeal from the county court to the district court may be had in inheritance tax matters, it is necessary to analyze article 22, ch. 77, Comp. St. 1929.

"The county court in the county * * * of which the decedent was a resident at the time of his death, *shall have jurisdiction to hear and determine all questions in relation to all taxes arising under this article,"* etc. Comp. St. 1929, sec. 77-2213. (Italics ours.)

The county court has exclusive and original jurisdiction over fixing, determining and assessing inheritance taxes. Keith county perfected its appeal from the county court to the district court under section 30-1601, Comp. St. 1929, which reads: "In all matters of probate jurisdiction, appeals shall be allowed from any final order, judgment, or decree of the county to the district court by any person against whom any such order, judgment or decree may be made or who

may be affected thereby;" under section 30-1602, Comp. St. 1929, which provides that all appeals shall be taken within 30 days after the decision complained of is made; and under section 30-1603, Comp. St. 1929, providing in part: "Every party so appealing shall give bond in such sum as the court shall direct, with two or more good and sufficient sureties, to be approved by the court, conditioned that the appellant will prosecute such appeal to effect without unnecessary delay, and pay all debts, damages and costs that may be adjudged against him."

Deuel county did not appeal, as provided for by section 77-2211, Comp. St. 1929, viz., "Any person or persons dissatisfied with the appraisement or assessment may appeal therefrom to the county court of the proper county within sixty days after the making and filing of such appraisement or assessment, conditioned upon the giving of security to the court to pay all costs, together with all taxes that may be fixed by the court;" did not attempt to appeal from the judgment of the county court fixing, determining and assessing the inheritance tax, and did not file a bond or transcript in the district court under any of the statutory provisions herein cited. This further develops the appellants' contention that the order of the district court fixing, determining and assessing the inheritance tax in favor of Deuel county is void, and we are required to again refer to article 22, ch. 77. We again quote from section 77-2201, Comp. St. Supp. 1941, as follows:

"All property, real, personal and mixed which shall pass by will or by the intestate laws of this state from any person who may die seized or possessed of the same while a resident of this state, * * * to any person or persons or to any body politic or corporate in trust or otherwise, * * * shall be and is subject to a tax at the rate hereinafter specified, to be paid to the treasurer of the proper county for the use of the state (the language of the above provision clearly indicates that the tax is on the *res*, and that the court, in determining and assessing the tax, takes into consideration the *res*), and all heirs, legatees and devisees, administrators, executors

and trustees shall be liable for any and all such taxes until the same shall have been paid as hereinafter directed." The foregoing language clearly indicates that all those having to do with the *res* are liable for the payment of the tax.

Section 77-2203, Comp. St. 1929, provides: "All taxes imposed by this article, unless otherwise provided for, shall be due and payable at the death of the decedent," etc.; section 77-2202 deals with "Estates for Life, Remainders, Tax, When Payable," and section 77-2204 provides in part as follows:

"Any administrator, executor or trustee having any charge or trust in legacies or property for distribution subject to said tax, shall deduct the tax therefrom, or if the legacy or property be not money, he shall collect the tax thereon upon the appraised value thereof from the legatee or person entitled to such property, and he shall not deliver or be compelled to deliver any specific legacy or property subject to tax to any person until he shall have collected the tax thereon, and whenever any such legacy shall be charged upon or payable out of real estate, the heir or devisee before paying the same shall deduct such tax therefrom and pay the same to the executor, administrator or trustee, and the same shall remain a charge upon such real estate until paid, and the payment thereof shall be enforced by the executor, administrator or trustee in the same manner that the payment of the legacies might be enforced."

It is obvious that the foregoing provisions of the statute deal with the *res,* as indicated, and specifically direct the payment and the duties of the personal representative of the deceased with reference thereto.

Section 77-2205, Comp. St. 1929, provides: "All executors, administrators and trustees shall have full power to sell so much of the property of the decedent as will enable them to pay said tax, in the same manner as they may be enabled to do by law for the payment of debts of their testators and intestates and the amount of the tax shall be paid as hereinafter directed."

Section 77-2206, Comp. St. 1929, provides: "Every sum of money retained by any executor, administrator or trustee, or paid into his hands for any tax on any property, shall be paid by him within thirty days thereafter to the treasurer of the proper county, and the treasurer or treasurers shall give, and every executor, administrator or trustee shall take a receipt from him of said payments. The words 'proper county' shall be taken to mean the county in which the property was situated and subject to taxation at the time of the death of the owner."

Section 77-2214, Comp. St. 1929, provides in part: "If it shall appear to the county court that any tax accruing under this article has not been paid according to law, it shall issue a summons commanding the persons or corporation liable to pay such tax or interested in such property to appear before the court on a certain day * * * to show cause why such tax should not be paid."

Section 77-2215, Comp. St. 1929, provides: "Whenever the treasurer of any county shall have reason to believe that any tax is due and unpaid under this article, after the refusal or neglect of the person interested in the property liable to pay said tax to pay the same, he shall notify the county attorney of the proper county in writing," etc.

A careful reading and analysis of the foregoing statutes make it clear that the inheritance tax is a direct charge against the *res*. The beneficiary, legatee or devisee receives the benefit of the estate, whether a person, an individual or a corporation. The provisions of article 22, ch. 77, indicate clearly that the present action is one *in rem* and not one *in personam*. This being true, the assessment of the tax, the proportionate shares to be paid by the beneficiaries, legatees or devisees, whoever they may be, and the manner of enforcing payment have to do with the distribution of the assets of the estate to such parties. Therefore, the matter is a probate matter, and sections 30-1601 to and including 30-1610, Comp. St. 1929, govern appeals in such matters. The following cases are pertinent to a determination of this assignment of error:

In *In re Estate of Nilson,* 126 Neb. 541, 253 N. W. 675, the court said: "The county court has original and exclusive jurisdiction in the settlement of estates by which distribution is made of the assets, and its final orders are binding upon all persons. The proceeding is *in rem.* All persons interested in the assets are considered parties in the county court, whether named or not, and they may appear for the purpose of protecting their interests in the county court or on appeal to the district court. Appeal to the district court removes the whole case to the district court, and all persons interested in the distribution are necessary parties in the district court and entitled to be heard there. *In re Estate of Creighton, supra; In re Estate of Sweeney, supra; In re Estate of Bayer,* 116 Neb. 670; *Blair v. Estate of Willman,* 105 Neb. 735. See, also, *Lewis v. Barkley, supra; St. James Orphan Asylum v. Shelby,* 75 Neb. 591; *Genau v. Abbott,* 68 Neb. 117; *Reischick v. Rieger,* 68 Neb. 348; *Boales v. Ferguson,* 55 Neb. 565; *Youngson v. Bond,* 69 Neb. 356; *Wilson v. Coburn,* 35 Neb. 530; *Williams v. Miles,* 63 Neb. 859; *Andersen v. Andersen,* 69 Neb. 565; Dame, Probate and Administration (3d ed.) 13, 14. These cases also dispose of the appellant's contention that the creditor, not having filed any pleadings in the county court, should not have been permitted to file an answer in the district court or appear as a party therein."

In *In re Estate of Creighton,* 91 Neb. 654, 136 N. W. 1001, the court held: "An order of the county court in the settlement of an estate, by which distribution is made of the assets, is appealable to the district court; the proceeding being *in rem,* all persons interested in the assets are parties. If A asks for an order of distribution that will exclude B from participation in the assets, he cannot afterwards object to the appearance of B to protect his interest in the county court, or afterwards upon appeal to the district court."

In *In re Estate of Sweeney,* 94 Neb. 834, 144 N. W. 902, the will of Bridget Sweeney was filed for probate in the county court on the petition of Peter O'Malley, who was named therein as executor. The county attorney filed ob-

jections to the probate of the will, claiming that the state of Nebraska was interested in the estate by reason of the fact that the deceased died without heirs, and, if intestate, her entire estate would escheat to the state of Nebraska, and for the further reason that the testatrix was incompetent to make a will. O'Malley moved to dismiss the objection of the state for the reason that it was not a proper party and had no interest. The motion was overruled. The county court found that the will was not the last will and testament of Bridget Sweeney and refused to admit it to probate. O'Malley and his wife, beneficiaries under the will, appealed to the district court. Subsequently, John and Michael Burchill filed a petition in intervention in the district court (having filed no pleadings in the county court), alleging that they were sons of a deceased half-brother of the testator, and heirs at law. O'Malley moved to dismiss their petition, charging insufficient facts pleaded, want of right to intervene, that the petition was filed out of time, and that the action was begun and tried in the county court. An amended petition was filed and the same objections thereto raised. After reviewing the contention of the appellants, and stating that the question had been considered in the *Creighton* case, the court followed *In re Estate of Creighton, supra,* holding as follows:

"A proceeding in the probate court to settle the estate of a decedent is a proceeding *in rem,* and every one interested in such settlement is a party in the probate court whether he is named or not, and this is particularly true as to the distribution of an estate under a will. * * *

"Where the court is called upon to determine the probate of a will, it is acting upon the *res* of the estate, and when an appeal is taken from the county court by the executors to the district court it removes the whole case to the district court, and all parties interested in the distribution are necessarily parties in the district court and are entitled to be heard there."

The case of *Nilson v. Tekamah Investment Co.,* 133 Neb. 180, 274 N. W. 465, followed *In re Estate of Sweeney, supra,*

holding: "A proceeding in the probate court to settle the estate of a decedent is a proceeding *in rem*, and every one interested in such settlement is a party in the probate court whether he is named or not." In that case Almitta Nilson brought a suit in the district court against the Tekamah Investment Company to recover upon a deposit made by her with such company. The district court ordered that the administrator of the Nilson estate be made a defendant and objections were filed thereto. The court said that the plaintiff ignored the fact that the vital question presented arises out of a proceeding *in rem*, and set forth the rule as heretofore announced in *In re Estate of Sweeney, supra*.

To analyze: Inheritance proceedings are had in the first instance and determined by the county court, having original and exclusive jurisdiction of probate matters. Such taxes assessed come from the assets of the estate and directly affect the distribution. Therefore, all parties interested in the distribution, whether named or not, may assert their rights in any case involving the assets of the estate, even though the same be on appeal and such parties have not appeared in the county court.

The appeal of Keith county vested the district court with jurisdiction to fix and determine the amount of the tax. The law (Comp. St. 1929, secs. 77-2201 to and including 77-2210) provides and designates to what counties and to whom the tax is payable. In the instant case, the district court determined the liability of the appellants with reference to payment of inheritance tax. Even though Deuel county was not a party to the appeal in the district court and did not intervene or file any pleadings therein, this does not foreclose the right of the county to receive inheritance tax as finally determined by the district court wherein the court has jurisdiction of the subject-matter, the tax being prorated to the respective counties, as hereinbefore set out, and as evidenced by sections 77-2201 to 77-2210, inclusive. The district court had jurisdiction of the *res* by virtue of the appeal of Keith county. The proceeding being *in rem*, each and every party interested therein was entitled to have a decision made con-

forming to the applicable rule. This the trial court did. It is thus obvious that a case of this kind, dealing with inheritance taxes, is not analogous to a case in contract, made by Deuel county, or one in which the interest of Deuel county is separately determined.

Under the circumstances and the authorities above cited, the fact that Deuel county did not follow the provisions of section 77-2211, Comp. St. 1929, is immaterial. The appeal of Keith county, which was proper in all respects, brought to the district court the entire subject-matter of the inheritance tax, and this included the tax on the personal property located in Deuel county and the liability, if any, of the appellants therefor.

We conclude that the trial court properly determined this assignment of error.

For the reasons given in this opinion, the judgment is
AFFIRMED.