CITY OF PLATTSMOUTH, APPELLANT, V. NEBRASKA TELE-
PHONE COMPANY, APPELLEE.

FILED JANUARY 9, 1908. No. 15,025.

1. **Cities:** TELEPHONE FRANCHISE: USE OF STREETS. A city ordinance
   extending to a telephone company the right to use the streets,
   alleys and public grounds of the city in the construction, opera-
   tion and maintenance of its plant or system, and which does
   not, in any of its provisions, indicate an attempt to exclude other
   like corporations or companies from a like privilege, is not the
   grant of an exclusive right or privilege.

2. ———: ———: ———. The authorities of a city or incorporated
   town or village may grant to a telephone company the use of
   the streets, alleys and public grounds of the municipality for
   constructing and maintaining a telephone system therein, such
   use of the streets, alleys and public grounds being for a public
   purpose.

3. ———: ———: ADDED BURDENS. When an ordinance of a city has
   invited investments and expenditures, which are made in good
   faith and in reliance upon it, the city authorities, if the use be
   a public one, cannot arbitrarily impose by subsequent regula-
   tions, without necessity or the demands of public convenience,
   additional burdens upon the company which are clearly beyond
   the reasonable exercise of the police power.

APPEAL from the district court for Cass county: PAUL
JESSEN, JUDGE. *Affirmed.*

*H. D. Travis,* for appellant.

*W. W. Morsman* and *Matthew Gering, contra.*

DUFFIE, C.

The plaintiff brought this action in equity for a man-
datory injunction, in which alternative relief is prayed.
The material allegations of the petition are the following:
(1) That the city of Plattsmouth has never granted de-
fendant any lawful or sufficient franchise, nor any fran-
chise to occupy the streets and alleys of the city; (2) that
defendant has been occupying the streets and alleys of
the city for more than 15 years without right or authority;

(3) that defendant has erected its poles and wires in Main street, along the south side, from First to Eighth streets, and has continued the same since the year 1888; that such poles and wires are dangerous to pedestrians and to property, are old and rotten, were used by the public as hitching posts for horses, and that thereby a nuisance was created; that the poles and wires interfere with the firemen in case of fire, and that the poles are unsightly; that in November, 1899, the city, by ordinance, required the defendant to place its wires underground in Main street, and that it failed and refused to comply with said ordinance; that in 1904 the city passed an ordinance requiring defendant to move its poles and wires from Main street to the alleys adjoining. The prayer is for an injunction against the use of the streets, alleys and public grounds of the city of Plattsmouth by the defendant, and that it be enjoined from operating its telephone system in the city; and, alternatively, if the court should find that the defendant had been granted a franchise for the use of the streets, that it then be required to remove its poles and wires from Main street between First and Eighth streets to the alleys north and south of Main street.

The answer admits that defendant has occupied the streets of the city and carried on its business therein, as alleged, for more than 15 years; that it has continuously maintained its poles and wires in and along the south side of Main street since the year 1888; that the city passed an ordinance in 1904, as alleged in the petition, requiring the defendant to remove its poles and wires to the alleys north and south of Main street, and which, defendant alleges, affirmatively repealed all prior conflicting ordinances. For a second defense it is alleged that defendant has maintained its poles and wires in Main street in the same place for more than 15 years with the knowledge and consent of the city; that in October, 1898, the city, by ordinance, granted defendant the right to occupy all the streets of the city without restriction, reserving to itself the free use of such poles for its own fire alarm wires;

that immediately after the passage of said ordinance defendant expended large sums of money in reconstructing its poles and wires in Main street; that its central office is in Main street and on the south side thereof; that Main street is 100 feet in width; that the sidewalks on each side are 20 feet wide; that defendant's poles are set at the curb line, 20 feet from the front walls of the buildings, and 160 feet apart; that there has never been on the south side of the street any building more than two stories high; that there never has been, and there is no prospect of, any congestion of the business in said street with which the poles of defendant will interfere in any degree whatever; that the alleys north and south of Main street are only 13 feet wide; that, if defendant's poles are set therein, they must be set 2½ feet from the line to avoid projecting the cross-arms over private property; that the change will cost $1,500, which is more than the net income from the defendant's system in said city in five years; that the ordinance passed in 1904 was not passed in the interests of the public and was an abuse of municipal power; that the ordinance is unreasonable, as the removal of defendant's poles and wires will serve no public interests, and its enforcement will impair the obligation of the contract between the city and the defendant.

On the trial the district court found generally for the defendant and dismissed the plaintiff's petition. The plaintiff has appealed.

The evidence shows that in each alley north and south of Main street there is a telephone line belonging to another company on one side of such alley and an electric light line belonging to the city on the other side. It is conceded that prior to October, 1898, defendant had no franchise granted by the city, the general statute relating to cities and villages of the class to which Plattsmouth belonged being deemed sufficient; but on that date the city passed an ordinance granting certain rights and privileges to the Nebraska Telephone Company, its successors and assigns, and regulating the erection of poles and wires and pro-

tecting the same. The ordinance, No. 91, so far as material to an examination of the questions involved, is as follows: "Section 1. That the Nebraska Telephone Company, its successors and assigns, be and are hereby granted right of way for the erection and maintenance of poles and wires and all appurtenances thereto for the purpose of transacting a general telephone and telegraph business through, upon and over the streets, alleys, and public grounds of the city of Plattsmouth, Nebraska; provided, that said company shall at all times when requested by the proper authorities permit their poles and fixtures to be used for the purpose of placing and maintaining thereon, free of charge, any wires which may be necessary for the use of the police or fire departments of the city of Plattsmouth, Nebraska; and further provided, that such poles and wires shall be erected so as not to interfere with ordinary traffic through such streets and alleys, and under the supervision of the committee on streets, alleys and bridges." Section 2 provides for stringing the wires 20 feet above the ground, and for the temporary removal of the poles and wires in case they obstructed any vehicle or structure being moved along or across any street or alley. Section 3 fixes the maximum rate allowed to be charged by the company, and section 4 makes it an offense to injure any poles, wires or instruments of the company. Soon after having completed the rebuilding of its system, the city passed another ordinance, of date November 27, 1899, declaring it unlawful to erect or maintain poles and overhead wires in Main street, and requiring all such wires to be placed in underground conduits; and on June 27, 1904, the city passed an ordinance requiring all poles and overhead wires to be removed from Main street between First and Eighth streets to the alleys adjacent thereto, said removal to take place by January 1, 1905, and repealing all ordinances in conflict therewith.

The defendant asserts that, having accepted the provisions of ordinance No. 91 and having expended large sums of money in reconstructing its lines in the city of

Plattsmouth under the permission granted by that ordinance, it has acquired a right in the streets of the city which cannot be taken away, except upon some ground of public necessity or convenience; while, on the other hand, the city asserts that the ordinance is void. The argument upon which it attempts to maintain the invalidity of the statute is as follows: Section 15, art. III of our constitution, prohibits the legislature from passing local or special laws granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever; and it is said that the legislature cannot delegate to a municipality a power which it cannot itself exercise. It is claimed that the ordinance in question is an attempt to grant to the defendant a special privilege or franchise, and that this is beyond the power of the municipal authorities. If we should concede (which we do not) that a general law, granting to cities and towns the powers which are usually found in their charters, did not confer upon such municipalities the power to pass and enforce special ordinances suited to their local conditions, still the ordinance in question is not subject to the criticism made upon it. A special privilege in constitutional law is a right, power, franchise, immunity or privilege granted to, or vested in, a person or class of persons to the exclusion of others and in derogation of common right. *Guthrie Daily Leader v. Cameron*, 3 Okla. 677, 41 Pac. 635. In *City of Elk Point v. Vaughn*, 1 Dak. 113, 46 N. W. 577, it was held that the act of congress of March 2, 1867, providing that the legislative assemblies of the several territories shall not grant any special privileges, refers to the granting of monopolies such as ferries, trade-marks, or the exclusive right to manufacture certain articles or to carry on a certain business in a particular locality, to the exclusion of others, and does not include the granting of a public charter to a municipal corporation. Ordinance No. 91 does not attempt to confer upon the defendant any exclusive right or franchise, and leaves it open for the city, at any time, to extend to other companies or corpora-

tions the same privileges awarded to the defendant. The contention, therefore, that ordinance No. 91 is void and confers no right upon the defendant cannot be sustained.

Subdivision XII, sec. 69 of plaintiff's charter (Comp. St. 1905, ch. 14, art. I) is in the following words: "To make all such ordinances, by-laws, rules, regulations, resolutions, not inconsistent with the laws of the state as may be expedient, in addition to the special powers in this chapter granted, maintaining the peace, good government, and welfare of the corporation, and its trade, commerce, and manufactories." Subdivision 24 of said section authorizes the city authorities to regulate the streets, "lamp-posts, awning posts, and all other structures projecting upon or over and adjoining, and all other excavations through and under the sidewalks in the said city or village." Subdivision 28 empowers the city or village "to open, create, widen, or extend any street, avenue, alley, or lane, or annul, vacate, or discontinue the same whenever deemed expedient for the public good." The use of the telegraph and telephone is so far a public convenience and necessity that in some states property may be condemned therefor under the power of eminent domain. *State v. American & European News Co.*, 43 N. J. Law, 381; *Pierce v. Drew*, 136 Mass. 75; *Pensacola T. Co. v. Western Union T. Co.*, 96 U. S. 1. It is therefore evident that the use of streets for telephone or telegraph purposes is a use for public purposes against which no objection can be made. As said in *Hobbs v. Long Distance T. & T. Co.*, 147 Ala. 393, 7 L. R. A. (n. s.) 87: "Since the days of the Cæsars, public highways have received the careful attention of all governments, not only for the purpose of providing ways by which armies could be moved and the people travel, but for the purpose of opening up avenues of communication by which reports could be speedily brought to the capital, and the interchange of commerce promoted. The laws of congress have provided for post roads, etc., before the telephone was known, provided for the same privileges for telegraph com-

33

panies, as were given to railways in using the public lands, and, in later days, it has developed the exceedingly valuable system of 'post routes' and free mail delivery along the public roads of the country, so that not the least important function of the public roads of the country is the transmission of messages from place to place." The people of the city of Plattsmouth are not alone interested in the telephone system of that city, but every other community in the state with which communication is made is equally interested, and the state itself has recognized the utility and necessity of this method of communicating news by granting a right of way for the building of such lines over the public highways of the state. Comp. St. 1905, ch. 89a, sec. 14. Under the general power given to the plaintiff by its charter and the general control which it exercises over the streets and public grounds of the city, its right to extend to the defendant the privilege of occupying its streets and public grounds cannot be questioned. *Nebraska T. Co. v. City of Fremont*, 72 Neb. 25.

The only question remaining is whether the public necessity or convenience requires that its wires in Main street should be placed in underground conduits or removed to the alleys north and south of said street between First and Eighth streets. That the rights of the defendant in the streets of the city must yield to public necessity or convenience is beyond question or dispute; but, having acquired a right in the streets, and having made expenditures on the strength of the grant extended by the city, the authorities are quite uniform that this right cannot be taken away in an arbitrary manner and without reasonable cause. In *Northwestern T. E. Co. v. City of Minneapolis*, 81 Minn. 140, it is said: "When such an ordinance has invited investments and expenditures made in good faith and in reliance upon it, the city authorities cannot arbitrarily impose by subsequent regulations, without necessity, or the demands of public convenience, additional burdens upon the company which are clearly beyond the reasonable exercise of the police power." In the body of

the opinion it is said: "An ordinance of a municipality, surrendering a part of its powers to a corporation to secure and encourage works of improvement, which requires the outlay of money and labor, to subserve the public interests of its citizens, when accepted and acted upon, becomes a contract between the city and the corporation which relied upon it, and the grantee cannot be arbitrarily deprived of the rights thus secured." In support of this principle authorities from the states of Ohio, Louisiana, Iowa, Massachusetts, Wisconsin, and numerous federal decisions are cited. That the city council may make reasonable regulations relating to the maintenance and repair of defendant's plant is not open to argument; but such regulation is not to be exercised at mere whim and caprice. It must be proportionate to, and commensurate with, the public necessity for the protection and promotion of the public health, safety, necessity or convenience. *City of Burlington v. Burlington Street R. Co., 49 Ia. 144.* The application of the police power cannot be extended by the authority which is entrusted with such application to an arbitrary misuse of private rights. That the city may order the removal of poles which endanger the citizens because of a rotten condition, and protect its inhabitants against any conduct of the business which endangers the public health or safety, is not a question open to dispute; but nothing of the kind appears in the record before us. As before stated, Main street is 100 feet in width. There is no evidence of a congested condition of the street or of any necessity from other causes for removing the defendant's poles.

So far as the record discloses, the action of the city council is arbitrary in its nature and wholly unsupported by any reasonable cause. Such being the case, we think the district court was right in refusing the injunction, and we recommend an affirmance of its judgment.

Epperson and Good, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

Affirmed.