K. B. McDONALD ET AL., APPELLANTS AND CROSS-APPELLEES, v. RHEA RENTFROW, COUNTY SUPERINTENDENT OF SHERMAN COUNTY, NEBRASKA, ET AL., APPELLEES AND CROSS-APPELLEES, SCHOOL DISTRICT No. 8, SHERMAN COUNTY, NEBRASKA, INTERVENER-APPELLEE AND CROSS-APPELLANT.

127 N. W. 2d 480

Filed April 10, 1964. No. 35607.

Dier & Ross, for appellants.

Mingus & Mingus, for intervener-appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

WHITE, C. J.

The sole question involved in this case is the constitutionality of section 79-403, R. S. Supp., 1961, relating to the transfer of land between adjoining school districts and the requirements for the fixing of new school district boundaries.

This statute is too long for full quotation herein, but it is necessary to set out the pertinent portions that are under attack here. The four subdivisions of this statute, section 79-403, R. S. Supp., 1961, set out and define the class of persons and the requirements for the filing of a petition for transfer of land from one school district to another. The petition must show: (1) Ownership of the land by the petitioner or petitioners; (2) location of the land in a district adjoining the one to which attachment is sought; (3) that there are school children residing on the land with their parents or guardians; and (4) that petitioner or petitioners reside certain distances with relation to the respective schoolhouses or school bus lines (not pertinent in this case), or *that they reside in a Class I or Class II district and own not less than eighty acres of land in an adjoining equal or higher class district to which they wish to transfer their land.*

Upon the filing of the petition setting out compliance with these requirements, the board (here, since the districts are in different counties, composed of six members, three elected officials of each county), is authorized to act as follows: "The board may, after a public hearing on the petition, thereupon change the boundaries of the districts so as to set off the land described in the peti-

tion and attach it to such adjoining district as is called for in the petition *whenever they deem it just and proper and for the best interest of the petitioner or petitioners so to do."* (Emphasis supplied.)

Appeals from the board's action are provided for in the following language: "Appeals may be taken from the action of such board, or when such board fails to agree, to the district court of the county in which the real estate is located * * *, in the same manner as appeals are now taken from the action of the county board in the allowance or disallowance of claims against the county."

Plaintiffs are the owners of land now in District No. 8, Sherman County, Nebraska (Rockville), and District No. 30, Howard County, Nebraska (Boelus). The object of the action is to transfer their land in the Rockville district to the Boelus district, based on their joint ownership of land in the two districts. The district court found, and the evidence shows, compliance by the plaintiffs with the four requisite requirements for the filing of the petition. The plaintiffs bought and own 80 acres of land in the Boelus school district which their son operates in connection with a farming and ranching operation. The evidence also shows that the children residing on the land in the Rockville district have been attending the Boelus school for some time, that the Boelus school is a higher class district (Class II), and that there are distinct educational advantages involving facilities, accreditation status of teachers, quality of teaching, number of students, and extra-curricular activities which would accrue to the educational benefits of the children involved as a result of the transfer. The district court, after finding that the jurisdictional requirements had been met, specifically found also "that there are Education advantages to the plaintiffs to be attached, as required by the Bladen School District case."

The district court, nevertheless, denied relief and dismissed the case holding that the authorization of transfer

based on joint ownership of land in both districts was an unconstitutional classification and constituted a local or special law for the benefit of individuals and, therefore, was special legislation in contravention of Article III, section 18, of the Constitution of Nebraska. The plaintiffs appeal.

The fixing of boundaries of school districts is exclusively a legislative function, and it may be properly delegated to a subordinate agency, providing the Legislature prescribes the manner and the standards under which the power of the designated board may be exercised. Nickel v. School Board of Axtell, 157 Neb. 813, 61 N. W. 2d 566; Schutte v. Schmitt, 162 Neb. 162, 75 N. W. 2d 656; Roy v. Bladen School Dist. No. R-31, 165 Neb. 170, 84 N. W. 2d 119. Stated more precisely this court said in Schutte v. Schmitt, *supra:* "The Legislature may delegate this authority provided it states the purpose for doing so and sets up reasonable standards to guide the agency which is to administer it." See, also, School Dist. No. 39 v. Decker, 159 Neb. 693, 68 N. W. 2d 354; Nickel v. School Board of Axtell, *supra;* § 79-420, R. S. Supp., 1961.

The real question at this point is whether the requirement for transfer on the basis of joint ownership in each district is a reasonable standard; that is, whether the classification of persons or property on this basis is a reasonable one. The applicable rule is precisely stated in the recent case of Fougeron v. County of Seward, 174 Neb. 753, 119 N. W. 2d 298, wherein this court stated: "The Legislature may make reasonable classifications of the objects of legislation for the purpose of legislating with reference thereto. The power of classification rests with the Legislature and it will not be interfered with by the courts if *real and substantial differences exist which afford a rational basis for classification.*" (Emphasis supplied.) And, as stated by Commissioner Roscoe Pound in Cleland v. Anderson, 66 Neb. 252, 92 N. W. 306, 5 L. R. A. N. S. 136: "On the other hand, if the

legislature has made a reasonable classification, -not a mere cloak or cover for an arbitrary exemption of certain persons or a certain class of persons, but a natural and proper selection of those who, upon a reasonable view of the mischiefs to be met, should be subject to the regulations prescribed, -and the law is made to operate generally and uniformly upon all of the class so constituted, the constitutional provision in question is not violated."

It seems to us that there is a real and substantial difference in situation as to the classes granted this privilege. The Legislature has here seen fit to allow an owner to have his entire unit of property, in adjoining districts, taxed in the district where his children are to be educated. And, significantly, in making the transfer under this section, the transferee school district must be at least Class II or higher. In this manner, the farmer or owner may give full financial tax benefit from all of his property to the school district that his children attend and contemplates that it will be devoted to the school having the better educational design and opportunity. It is true that this addition to the statute by the Legislature in 1955 was a further departure from the concept of land adjacency as a standard of transfer generally present in the history of our school districting statutes. And, we test this statute by what it actually authorizes. It is true that it authorizes or permits land some distance from the boundaries of the transferee school district to be joined and taxes paid thereon. But, there is no expressed constitutional requirement that the land be adjacent to or adjoin the proposed transferee district and the wisdom of this policy is not for this court to determine. The evaluation of the effects of an authorized transfer and the educational benefits flowing therefrom is exclusively within the discretion of the lawmaking body. The classification selected is within the scope of constitutional legislative power to fix the boundaries of school districts, and the classification of the objects

of the legislation bears a reasonable relation to the purpose of the legislation. This is so because there is a real and substantial difference in situation as to owners who have land with school children thereon and pay taxes on different portions of their property in two adjoining school districts. For these reasons, we find that the district court's holding of unconstitutionality in this respect is in error.

However, the intervener on appeal devotes almost its entire argument to another attack on the constitutionality of this statute. This argument is that the statute is in violation of Article II, section 1, of the Constitution of Nebraska, because it is an attempt to delegate and impose legislative functions upon the judicial department of the government. This argument is based on the holdings in Winkler v. City of Hastings, 85 Neb. 212, 122 N. W. 858, and Searle v. Yensen, 118 Neb. 835, 226 N. W. 464, 69 A. L. R. 257. The argument is that the discretionary power of the board may be exercised under the statute, "whenever they deem it just and proper and for the best interest of the petitioner or petitioners so to do." It is argued that such a standard is not a reasonable one and that it is so vague and indefinite as to not constitute any ascertainable fact standard at all. It is, therefore, argued that unrestrained legislative power is vested in the board, that the appeal section referred to previously in this opinion provides for trial de novo in the district court, that an appeal may be taken even when there is no decision by the board, and that therefore the design and scheme of the statute, and what the statute authorizes, are a complete delegation of legislative power to the courts. In the Searle case, *supra*, the court struck down as unconstitutional a provision in a statute on power district boundaries which provided for the district court to determine, "whether or not the district should be incorporated"; "whether the suggested boundaries are reasonable and proper for the public convenience and welfare"; and to "change,

alter and fix the boundary lines * * * with the end in view of promoting the interest thereof * * *." This court held in that case that: "These questions are all political and legislative in their nature." This case contains an exhaustive discussion of the principles lying behind the constitutional mandate forbidding any department of our government to exercise any power properly belonging to the others. In the Searle case, *supra,* in the application of these principles, the court pointed out that the Legislature may condition the operation of the law upon the existence of certain facts, and may submit to the courts the judicial power for the determination of those facts. But, it cannot delegate to the courts the power to make a law; that is, delegate the power for the court itself to determine the facts or fact standards which invoke the operation of the power granted in the law itself. In the Winkler case, *supra,* the statute provided that a city council could detach the property of an owner from the city limits by ordinance and that if the council failed to detach upon proper application under the terms of the statute, the aggrieved property owner could appeal to the district court under the same provisions for appeal as provided for in the present case. In other words, in the Winkler case, *supra,* the district court in trying the case de novo on appeal had full power to determine any boundaries and detach property from the city. The court struck down this statute because it held that the original grant of power to the council by the statute was purely legislative in nature and the provision for direct appeal in the event of failure to act was a vesting of the same legislative power in the court *without any limiting guidelines or fact standards.* It also held, in effect, that the appeal process could not be used as a guise to cover what was, in essence, a complete delegation of legislative power to the judiciary.

We have no doubt that those cases correctly construed the particular statutes in question and properly applied the proper distinction between legislative and

judicial power. The intervener compared the language of the statute in those cases with the language of the provisions of the statute that is here under attack. This comparison by isolation from context seems to make a plausible and persuasive argument by analogy that the statute in the present case is unconstitutional. But, in Roy v. Bladen School Dist. No. R-31, *supra,* this court construed these identical provisions present in the predecessor statute (1955). This court directly construed the language under attack here as it related to the nature and character of the power granted, and the jurisdiction of the courts on appeal, and whether a suitable fact standard was set up in the statute which could invoke a judicial power of the courts to review. In that case, the court said: "In that connection, we are required to determine only three propositions, to wit: (1) The nature of proceedings before the board and the capacity in which it is required to act; (2) the manner and character of the hearing upon appeal to the district court and this court; and (3) the primary factors to be considered in determining whether or not it is 'just and proper and for the best interest of the petitioner or petitioners,' to set off the land described in plaintiff's petition from the Bladen district and attach it to the Campbell district."

In the above case, the court construed the statute in pari materia with other school districting statutes and in light of the legislative intent as demonstrated by a contextual examination of all of the provisions of the whole act. It held, in substance, three important things for our consideration here. First, the Legislature had delegated to the board and it was required *"to exercise a quasi-judicial power, equitable in character."* Second, the court held as to the power of the district court on appeal as follows: "Thus, on appeal to the district court, the cause was triable de novo there as in any other original equitable action." And, third, it held that the identical requirement concerning "whether or not it

is just and proper and for the best interest of the petitioner or petitioners," constituted a suitable fact standard for judicial review. Said the court: "We turn then to proposition (3). In that connection, we conclude that in the enactment of section 79-403, R. S. Supp., 1955, authorizing the board to set off lands from one school district and attach it to an adjoining district, whenever after a public hearing it deems it just and proper and for the best interests of the petitioner so to do, the intention of the Legislature was that the board in making such determination should predicate it upon the convenience of transportation of children of school age to schools, and *the educational welfare and needs of petitioners' children,* and not the mere personal preferences of petitioners based upon noneducational reasons. That section and others in pari materia deal with schools in order to promote their proficiency in the education of petitioners' children of school age, and not the secular business affairs of petitioners. *In other words, the best interests of the petitioner or petitioners means the best educative interest of petitioner or petitioners and not the best noneducational interest of petitioner or petitioners.*" (Emphasis supplied.)

In the above case, after construing the statute as above set out, this court, exercising its powers to try the case de novo, made an independent fact determination of what the best educative interests were of the children involved and rendered judgment accordingly, reversing the judgment of the trial court.

We have not overlooked the argument of intervener to the effect that the design and scheme of this statute providing for direct appeal when the board fails to agree (the board here being composed of equal-numbered representatives from counties in which the adverse school districts are located), create a situation designed to place the controlling power in the courts to determine school district boundaries, which is admittedly a purely legislative function in point of origin. But, the holding in the

Bladen School District case, *supra,* is that the original board sits as a quasi-judicial tribunal exercising in part judicial powers, and that therefore the appeal power lies to the courts. And, we said, in Schutte v. Schmitt, *supra:* " 'While the establishing of boundaries of public school districts for school purposes is a legislative function, the legislature may confer on public boards or courts judicial power to determine the facts and equities under which legislation authorizes changes in such boundaries. City of Wahoo v. Dickinson, 23 Neb. 426; Winkler v. City of Hastings, 85 Neb. 212, Searle v. Yensen, 118 Neb. 835.' See, also, Watkins v. Dodson, *supra.*" Furthermore, in the recent case of Frankforter v. Turner, 175 Neb. 252, 121 N. W. 2d 377, we held that the failure to reach a decision by a similarly constituted board (consisting of officials of two different counties) was a final appealable order.

We therefore hold that the statute created a reasonable classification and did not unconstitutionally delegate legislative power to the courts. And, further, the quasi-judicial power originally vested in the board, to change school district boundaries, is reviewable de novo in the district court and in this court, the same as in equity.

Intervener has filed a cross-appeal herein, but in the light of our holdings, it is unnecessary to decide any issues raised therein.

The evidence conclusively shows that petitioners complied with the four jurisdictional requirements for transfer, and that it is for the best educative interests of the children involved that they be transferred. The trial court so found on the facts, and we agree. The judgment of the district court is reversed and the cause remanded with directions to grant the transfer of petitioners' land to the Boelus school district as prayed for.

REVERSED AND REMANDED WITH DIRECTIONS.