SCHOOL DISTRICT NO. 46, SARPY COUNTY, NEBRASKA, AND DAVID K. KENTSMITH, APPELLANTS, V. CITY OF BELLEVUE AND BELLEVUE SCHOOL DISTRICT, SARPY COUNTY, NEBRASKA, APPELLEES.

400 N.W.2d 229

Filed January 23, 1987.    No. 85-639.

L. Bruce Wright and Kathleen A. Jaudzemis of Cline, Williams, Wright, Johnson & Oldfather, for appellants.

John E. Rice, Bellevue City Attorney, for appellee City of Bellevue.

Dixon G. Adams, for appellee Bellevue School District.

KRIVOSHA, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ., and CHEUVRONT, D.J.

KRIVOSHA, C.J.

The question presented by this appeal is whether the provisions of Neb. Rev. Stat. § 79-801(4) (Cum. Supp. 1984) are unconstitutional for any of the various reasons alleged by the appellants, school district No. 46 of Sarpy County and David K. Kentsmith. The district court for Sarpy County, Nebraska, found, in effect, that § 79-801(4) did not violate either the U.S. Constitution or the Constitution of the State of Nebraska by sustaining demurrers filed by the appellees, the Bellevue School District and the City of Bellevue. For reasons more particularly set out hereinafter, the judgment of the district court is affirmed.

Section 79-801(4) provides as follows:

Whenever an application for approval of a final plat or replat is filed for territory which lies within the zoning jurisdiction of a city of the first or second class and does not lie within the boundaries of a Class IV or V school district, the affected school board of the city district or its representative and the affected school board or boards serving the territory subject to the final plat or replat or their representative shall meet within thirty days of such application and negotiate in good faith as to which district shall serve the platted or replatted territory and the effective date of any transfer based upon the criteria prescribed in subsection (2) of this section.

If no agreement has been reached prior to the approval of the final plat or replat, the territory shall transfer to the

school district of the city of the first or second class upon the filing of the final plat unless an affected district petitions the district court within ten days of approval of the final plat or replat and obtains an order enjoining the transfer and requiring the affected school boards to continue negotiation. The court shall issue the order upon a finding that the affected board or boards have not negotiated in good faith based on one or more of the criteria listed in subsection (2) of this section. The district court shall require no bond or other surety as a condition for any preliminary injunctive relief. If no agreement is reached after such order by the district court and additional negotiations, the platted or replatted territory shall become a part of the school district of the city of the first or second class.

Section 79-801(2) provides in part:

During the process of negotiation, the affected school boards shall consider the following criteria:

(a) The educational needs of the students in the affected school districts;

(b) The economic impact upon the affected school districts;

(c) Any common interests between the annexed or platted area and the affected school districts and the community which has zoning jurisdiction over the area; and

(d) Community educational planning.

The undisputed evidence is that school district No. 46 and the Bellevue School District are both Class III school districts located in Sarpy County, Nebraska, and share a common boundary line. The City of Bellevue is a city of the first class, and the zoning jurisdiction of the City of Bellevue extends for a distance of 2 miles beyond the city limits and into the territory served by school district No. 46. Similarly, by definition as a Class III school district, school district No. 46 also must have a city or village in it which has extraterritorial zoning powers. See § 79-801(1).

On April 11, 1985, an application for final plat was filed, seeking to replat a number of lots in Normandy Hills

subdivision, which is located in school district No. 46, south of the Bellevue School District's southernmost boundary. While the subdivision lies wholly outside the boundaries of the City of Bellevue and also outside the boundaries of the Bellevue School District, the subdivision does lie within the zoning jurisdiction of the City of Bellevue. This application triggered the transfer of the property out of school district No. 46 and into the Bellevue School District pursuant to the provisions of § 79-801(4). A request was made by the Bellevue School District to school district No. 46 to negotiate, as provided by § 79-801(4). District No. 46, however, chose not to negotiate and, instead, filed an action in the district court for Sarpy County, Nebraska, seeking an injunction and a declaration that § 79-801(4) is unconstitutional. This is not the same injunction which might have been obtained if good faith negotiations had not been conducted as provided by § 79-801(4). The district court determined that the act was not unconstitutional. It is from that order that this appeal is now taken.

Before proceeding to address the constitutional issue, we are required to first address the question of whether school district No. 46 is a proper party to this action. We believe it is not. In the case of *Board of Education v. Winne*, 177 Neb. 431, 434-35, 129 N.W.2d 255, 257-58 (1964), quoting from *Halstead v. Rozmiarek*, 167 Neb. 652, 94 N.W.2d 37 (1959), we said:

> "In reference to the assertion of appellees that the proposed change of boundaries would affect the Baker district because it would deprive it of a part of its territory and this would result in a decrease of the amount and value of the taxable property in the district and would cause an increase of the tax burden upon the remaining property therein, it may be appropriately said that notwithstanding the statute provides that a school district is a body corporate, possesses the usual powers of a corporation for public purposes, and may sue and be sued, it is the firmly established law of this state that a school district may not maintain an action involving a change in the boundaries of a school district. A school district in this state has no territorial integrity. It is subject to the reserve power of the state exercised through

administrative authority to change its territory according to current educational needs and good educational principles. The state may change or repeal all powers of a school district, take without compensation its property, expand or restrict its territorial area, unite the whole or a part of it with another subdivision or agency of the state, or destroy the district with or without the consent of the citizens."

It therefore follows that if a school district may not question a change in boundary, it also may not attack the law which prescribes how and in what manner those boundaries shall be changed. School district No. 46 has no legal interest in the question presented by the case and, therefore, no standing to raise the constitutional issues set out in its petition.

The situation in regard to the additional appellant, Kentsmith, is, however, another matter. By his petition he first alleges that he is a resident, property owner, and taxpayer of school district No. 46. He then alleges in his first cause of action that the transfer of the land will "cause great damage . . . to Kentsmith from loss of tax support and student population . . . ." He further alleges in his third cause of action that "[a]s a property owner whose property is taxed to support School District No. 46, Kentsmith's financial burden would be increased if the replatted territory is transferred from School District No. 46 to School District of Bellevue." He further alleges that he "received no notice from and has been afforded no hearing by the City or by the School District of Bellevue regarding the transfer . . . ." These are all allegations made on his own behalf and not on behalf of school district No. 46. To this petition the City of Bellevue and the Bellevue School District demurred. While the allegations do not entitle Kentsmith to any relief, they are, nevertheless, sufficient to give him standing to sue. It is *his* tax burden which he alleges will be affected by the transfer, and his property which will be "injured" by the transfer.

In *Farrell v. School Dist. No. 54*, 164 Neb. 853, 868, 84 N.W.2d 126, 136 (1957), we said:

"A court of equity will, on the application of resident taxpayers, restrain public officers from doing an illegal

act where the effect of such act, if consummated, would be a waste of public funds raised by taxation." See, also, McLain v. Maricle, 60 Neb. 353, 83 N.W. 85; [citation omitted].

In *Lindeman v. Corson*, 93 Neb. 548, 550, 141 N.W. 153, 154 (1913), we said:

"In an action by injunction, brought to restrain officers of a school district from removing to another location a schoolhouse situated in said district, the right of plaintiffs to maintain the action is established, if it appears that they are resident taxpayers of the district, and the proposed removal, if unauthorized, would involve a waste and an unwarranted expenditure of public funds; and no other or greater interest need be shown."

See, also, *Hess v. Dodge*, 82 Neb. 35, 116 N.W. 863 (1908).

While we do not find that Kentsmith's claims are meritorious, we perceive of no reason why, if one who is a taxpayer and resident may seek an injunction on a claim that the act to be performed is illegal, he or she does not have standing to seek an injunction when he or she alleges that he or she is a resident taxpayer who is about to be injured by reason of the fact that an unconstitutional act is about to be performed. Kentsmith does, therefore, have standing to sue, and we are therefore required to review his constitutional claims.

Specifically, Kentsmith claims that § 79-801(4) is in violation of the Constitutions of both the United States and the State of Nebraska for one or more of the following reasons: (1) It violates Neb. Const. art. I, § 1, and art. III, § 18, and the 14th amendment to the U.S. Constitution; (2) Section 79-801(4) is an unconstitutional delegation of legislative power; and (3) Section 79-801(4) denies to patrons of school district No. 46 due process, in violation of Neb. Const. art. I, § 3, and the 14th amendment to the U.S. Constitution. We shall address each of these claims in the order in which they have been raised.

I. *Section 79-801(4) constitutes special legislation, in violation of Neb. Const. art. III, § 18, and the equal protection guarantees of both the federal and state Constitutions.*

Kentsmith argues that § 79-801(4) is special legislation because it has granted to certain Class III school districts, such

as the Bellevue School District, certain rights which are denied to other Class III school districts, such as school district No. 46. We believe that not to be the case. An examination of the act discloses that all Class III school districts have been granted the same rights and that, therefore, there is no special class created. Section 79-801 provides that a Class III school district shall be a district which is embraced within the corporate limits of each incorporated city or village, together with such additional territory and additions to such city or village as may be added thereto where the city or village has a population of more than 1,000 and less than 100,000. All such villages or cities have extraterritorial zoning jurisdiction, although the distances may vary depending upon the class of the city or village. Neb. Rev. Stat. § 15-902 (Supp. 1985) (3 miles for city of primary class); Neb. Rev. Stat. § 16-901 (Reissue 1983) (2 miles for city of first class); Neb. Rev. Stat. § 17-1001 (Reissue 1983) (1 mile for city of second class and villages). In the instant case both school district No. 46 and the Bellevue School District have as their principal location a city or village having a population of more than 1,000 and less than 100,000, because unless school district No. 46 has within its boundaries a city or village having a population of more than 1,000 and less than 100,000, it cannot be a Class III school district. As a result, both school district No. 46 and the Bellevue School District have the right, whenever an application for approval of a final plat is filed regarding property which is located within the zoning jurisdiction of the city or village and which is also located within the respective school district, to annex to the school district the land included in the area for which the final plat or replat is sought. The fact that the specific land involved in this action lies only within the zoning jurisdiction of the City of Bellevue, and, therefore, the Bellevue School District, does not make the act class legislation. By the same token, if the final plat involved land lying within the zoning jurisdiction of the city or village which permits school district No. 46 to be a Class III school district, school district No. 46 would have the right to cause the transfer of such land to become a part of its school district.

The fact that in the instant case school district No. 46 must yield to the Bellevue School District does not make the

classification unlawful. The test is not whether a particular entity may exercise a right in a given situation but, rather, whether the class is so constructed that other entities may exercise rights and be a part of the class if they acquire the necessary characteristics and meet the necessary prerequisites.

Whenever a plat or replat is filed within the zoning jurisdiction of the city or village having a population of more than 1,000 and less than 100,000 inhabitants, a Class III school district which serves that city or village may exercise the rights granted Class III school districts under the provisions of § 79-801. There is no distinction between "urban Class III" school districts and "rural Class III" school districts, as suggested by Kentsmith. All Class III school districts have the same characteristics and are afforded the same rights under § 79-801(4). The argument that this is special legislation or that a separate class within Class III school districts has been created is simply not supported by the facts. See, also, *Hunzinger v. State*, 39 Neb. 653, 58 N.W. 194 (1894). There is simply no basis to Kentsmith's claim that there is an improper class created by the provisions of § 79-801(4) and, therefore, no basis to the argument that § 79-801(4) violates either Neb. Const. art. I, § 1, or art. III, § 18, or the 14th amendment to the U.S. Constitution.

II. *Section 79-801(4) denies to persons within school district No. 46 equal protection of the law.*

Nor is there any basis for contending that the statute denies to the persons within school district No. 46 equal protection of the law. We have previously held that in analyzing equal protection claims in the social and economic context for claims which do not involve suspect classes or fundamental rights, if there exists such classification, the court uses the "rational basis test." In *State v. Michalski*, 221 Neb. 380, 385, 377 N.W.2d 510, 515 (1985), we said:

> [I]f the statute involves economic or social legislation not implicating a fundamental right or suspect class, courts will ask only whether a rational relationship exists between a legitimate state interest and the statutory means selected by the legislature to accomplish that end. See, e.g., *Vance v. Bradley*, 440 U.S. 93, 99 S. Ct. 939, 59 L. Ed. 2d 171

(1979); *New Orleans v. Dukes*, 427 U.S. 297, 96 S. Ct. 2513, 49 L. Ed. 2d 511 (1976). Upon a showing of a rational relationship between means and ends, courts will find such legislation constitutionally healthy.

And, earlier, in *McDonald v. Rentfrow*, 176 Neb. 796, 800-01, 127 N.W.2d 480, 483-84 (1964), we said:

"[I]f the legislature has made a reasonable classification, -not a mere cloak or cover for an arbitrary exemption of certain persons or a certain class of persons, but a natural and proper selection of those who, upon a reasonable view of the mischiefs to be met, should be subject to the regulations prescribed, -and the law is made to operate generally and uniformly upon all of the class so constituted, the constitutional provision in question is not violated."

Kentsmith's principal argument seems to be that persons in "rural Class III school districts" are treated differently and unfairly as compared to persons in "urban Class III school districts." As we have already noted, § 79-801(4) does not make such an urban versus rural classification, but, rather, all Class III school districts are treated equally.

Furthermore, even if the Legislature had created classifications between Class III school districts, we have previously held that the state has a rather obvious interest in providing for the orderly expansion of cities and villages and corresponding school districts principally located within such cities and villages. See *Northwest High School Dist. No. 82 v. Hessel*, 210 Neb. 219, 313 N.W.2d 656 (1981). This court is simply unable to say that there is no rational basis for suggesting that as a city acquires zoning jurisdiction over land, the school district principally located within the city or village should not have first right to provide for the educational needs of the people in that plat. In fact, in most instances the land will not only be within the city's zoning jurisdiction but, after a time, within the corporate limits itself. The district court was correct in refusing to find that § 79-801(4) denied to persons within school district No. 46 the equal protection of the law.

III. *Section 79-801(4) is an unconstitutional delegation of legislative power.*

We have previously addressed this question and rejected such argument. In *McDonald v. Rentfrow, supra* at 800, 127 N.W.2d at 483, we said:

> The fixing of boundaries of school districts is exclusively a legislative function, and it may be properly delegated to a subordinate agency, providing the Legislature prescribes the manner and the standards under which the power of the designated board may be exercised. Nickel v. School Board of Axtell, 157 Neb. 813, 61 N.W.2d 566; Schutte v. Schmitt, 162 Neb. 162, 75 N.W.2d 656; Roy v. Bladen School Dist. No. R-31, 165 Neb. 170, 84 N.W.2d 119. Stated more precisely this court said in Schutte v. Schmitt, *supra*: "The Legislature may delegate this authority provided it states the purpose for doing so and sets up reasonable standards to guide the agency which is to administer it." See, also, School Dist. No. 39 v. Decker, 159 Neb. 693, 68 N.W.2d 354; Nickel v. School Board of Axtell, *supra*; § 79-420, R.S. Supp., 1961.

An examination of § 79-801(4) clearly provides those standards. The mechanism which triggers the transfer is clearly prescribed by statute. Furthermore, the criteria which are to be used in negotiating the transfer are set out by § 79-801(2). Finally, the act also provides that if the parties are unable to negotiate in accordance with the standards, then the school district located within the village or city having zoning jurisdiction over the land in question shall acquire the land and make it a part of its school district. There are certainly limits to the school district's discretion in that scheme. We, again, believe that the district court was correct in its determination.

IV. *Section 79-801 violates due process rights because it does not provide for notice and a hearing.*

We have, likewise, addressed this issue and held to the contrary. In *Nickel v. School Board of Axtell*, 157 Neb. 813, 825-26, 61 N.W.2d 566, 574 (1953), we said:

> Questions of public policy, convenience, and welfare, as related to the creation of municipal corporations, such as counties, cities, villages, school districts, or other subdivisions, or any change in the boundaries thereof, are,

in the first instance, of purely legislative cognizance and, when delegated to any public body having legislative power, any action in regard thereto does not come within the due process clause of either the state or federal Constitutions. See, Searle v. Yensen, 118 Neb. 835, 226 N.W. 464, 69 A.L.R. 257; Ruwe v. School District, *supra*; Nebraska Mid-State Reclamation Dist. v. Hall County, *supra*; Seward County Rural Fire Protection Dist. v. County of Seward, *supra*.

But when, as a condition to their creation or change, the public body to which such authority is delegated must find certain facts to exist upon which the Legislature has said depends its authority to declare such subdivision, or any change therein, to exist then the questions presented are of a quasi-judicial character. In such cases a hearing must be had to determine if such facts exist and proper notice thereof must be provided for and given to all parties interested therein. See, Searle v. Yensen, *supra*; Ruwe v. School District, *supra*.

In the present case the school districts are not required to find certain facts before they have authority to act. The triggering mechanism is the filing of a request for the acceptance of a plat or replat. Once that application for approval is filed, the two districts are required to negotiate. There is no quasi-judicial function delegated to the school districts in this regard, and there are no findings to be made concerning the request for approval of a final plat or replat. The fact of the existence of a request for approval of a final plat or replat becomes evident and apparent once the application is filed. Thereafter, the process becomes completely mechanical. The filing of the application triggers the act, and no findings by the school districts are required or made. Consequently, the requirement for the attachment of due process rights does not exist.

For the foregoing reasons we conclude that the district court was correct in its conclusion that § 79-801(4) does not violate either the U.S. Constitution or the Constitution of the State of Nebraska. The request for an injunction should have been denied on the basis requested, and the demurrers, therefore, were correctly sustained. The judgment is affirmed.

AFFIRMED.

SHANAHAN, J., concurring.

While reaching a correct result regarding school district No. 46, the majority has overlooked some basic premises and principles of constitutional law. The majority states: "School district No. 46 has no legal interest in the question presented by the case and, therefore, no standing to raise the constitutional issues set out in its petition."

In these proceedings the plaintiffs' petition commences: "COME NOW the plaintiffs, School District No. 46 . . . and David K. Kentsmith . . . and for *their* causes of action . . . ." (Emphasis supplied.) The petition then sets out six causes of action, one of which claims that Neb. Rev. Stat. § 79-801 (Cum. Supp. 1984) violates "the equal protection clauses of the United States Constitution and the Nebraska Constitution" (sixth cause of action) and requests a declaration that § 79-801 is unconstitutional, while another cause of action asserts that § 79-801, possibly reducing the school district's tax revenue and number of pupils, is "special legislation" in violation of Neb. Const. art. III, § 18 (first cause of action), and is, therefore, unconstitutional.

Among the safeguards of the 14th amendment to the U.S. Constitution is the "equal protection" clause, namely: "[N]or shall any State . . . deny to any person within its jurisdiction the equal protection of the laws." Neb. Const. art. I, § 1, provides: "All persons are by nature free and independent, and have certain inherent and inalienable rights . . . ." Further, according to Neb. Const. art. III, § 18: "The Legislature shall not pass local or special laws . . . [g]ranting to any corporation, association, or individual any special or exclusive privileges, immunity, or franchise whatever . . . ." As this court expressed in *City of Plattsmouth v. Nebraska Telephone Co.*, 80 Neb. 460, 464, 114 N.W. 588, 590 (1908): "A special privilege in constitutional law is a right, power, franchise, immunity or privilege granted to, or vested in, a person or class of persons to the exclusion of others and in derogation of common right."

Recently, we pointed out:

The 14th amendment to the U.S. Constitution prohibits a state from, among other things, denying any person

equal protection of the laws and from depriving any person of property without due process of law.

Article I, § 1, of the Nebraska Constitution does not concern itself with equal protection of the laws. It is article III, § 18, which deals with disparate treatment by concerning itself with special legislation.

*Porter v. Jensen*, 223 Neb. 438, 443, 390 N.W.2d 511, 515 (1986).

A school district has been judicially recognized as a species of municipal corporation. See *Nickel v. School Board of Axtell*, 157 Neb. 813, 61 N.W.2d 566 (1953). There is a definite difference between a business corporation and a municipal corporation, a distinction recognized by the Supreme Court of Missouri in *St. Louis v. Smith*, 325 Mo. 471, 477, 30 S.W.2d 729, 730 (1930):

[A business corporation is] organized for the purpose of carrying on a business for profit; while [a municipal corporation] is organized with political and legislative powers for the local civil government and police regulation of the people of a particular district included within its boundaries; and that it is a subordinate branch of the domestic government of a state.

This court has employed a definition for *association*, namely, " 'The act of a number of persons in uniting together for some purpose. The persons so joining.' " *In re Estate of Sautter*, 142 Neb. 42, 52, 5 N.W.2d 263, 268 (1942).

A municipal corporation, as a subdivision of a state, is not a "person" guaranteed equal protection of the laws. See, *Bd. Comm'rs v. Kokomo City Plan Comm.*, 263 Ind. 282, 330 N.E.2d 92 (1975); *Shelby v. City of Pensacola*, 112 Fla. 584, 151 So. 53 (1933); *Warren County, Mississippi v. Hester*, 219 La. 763, 54 So. 2d 12 (1951). As expressed by Justice Cardozo in *Williams v. Mayor*, 289 U.S. 36, 40, 53 S. Ct. 431, 77 L. Ed. 1015 (1932): "A municipal corporation, created by a state for the better ordering of government, has no privileges or immunities under the federal constitution which it may invoke in opposition to the will of its creator."

Other jurisdictions have specifically held that a school district, being neither a natural nor artificial person, but being a

legislative creation, is not a "person" within the meaning of any bill of rights or constitutional limitation. See, *Ind. Sch. Dist. v. Board*, 230 Iowa 924, 299 N.W. 440 (1941); *Grasko v. Los Angeles City Board of Education*, 31 Cal. App. 3d 290, 107 Cal. Rptr. 334 (1973); *Dean v. Armstrong*, 246 Iowa 412, 415, 68 N.W.2d 51, 53 (1955) ("[A] school district 'is a legislative creation. It is not organized for profit. It is an arm of the state, a part of its political organization. It is not a "person" within the meaning of any bill of rights or constitutional limitation. It has no rights, no functions, no capacity, except such as are conferred upon it by the legislature. . . .' "). Therefore, the equal protection clause of the 14th amendment to the U.S. Constitution and the "special laws" provision of the Nebraska Constitution are not applicable to a school district, which is not a "person" protected by the Constitution, state or federal. Those constitutional guarantees providing equal protection and prohibiting special legislation contemplate an entity having existence independent of a legislature's largess.

Kentsmith ostensibly asserts a claim on behalf of school district No. 46, alleging constitutional considerations of equal protection and special legislation, and thereby acts as a surrogate or alter ego for the school district, seeking redress for school district No. 46. Generally, one cannot assert the constitutional rights of another. See *Blackledge v. Richards*, 194 Neb. 188, 231 N.W.2d 319 (1975). Ordinarily, a challenge to constitutionality of a statute on the ground that the assailed statute denies equal rights and privileges by discriminating between persons or classes may not be made by one not belonging to the class alleged to be discriminated against. See *Griffin v. Gass*, 133 Neb. 56, 274 N.W. 193 (1937). See, also, *Ritums v. Howell*, 190 Neb. 503, 209 N.W.2d 160 (1973) (one who is not harmfully affected by a particular feature of a statute, alleged to be unconstitutional, may not urge the unconstitutionality of the statute in question). As this court announced in *State ex rel. Nelson v. Butler*, 145 Neb. 638, 651, 17 N.W.2d 683, 691-92 (1945):

It is firmly established as the universal rule that a person "may attack the constitutionality of a statute only when and so far as it is being or is about to be applied to his

disadvantage; and to raise the question he must show that the alleged unconstitutional feature of the statute injures him and so operates as to deprive him of a constitutional right, and, of course, it is prerequisite that he establish in himself the claimed right which is alleged to be infringed."

If a school district is not a person with constitutional stature to assert certain rights under the Constitutions, Kentsmith, as a protagonist for the school district, cannot by litigation enhance the school district's stature and produce rights for the district greater than those existing in the constitutional realities of the situation before us.

Consequently, in situations such as the present and as the result of a school district's existence as a municipal corporation and subdivision of the state, neither school district No. 46 nor Kentsmith on behalf of that school district has the capacity to raise constitutional questions concerning equal protection and special legislation. In approving a school district's amorphous existence in relation to equal protection and special legislation, today's decision introduces forensic fog into already clouded cases concerning a school district's capacity to raise constitutional questions.